George M. WAWRYKOW, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–150 CR and 09–92–151 CR.

Court of Appeals of Texas,
Beaumont.

Nov. 24, 1993.

David Cunningham, Houston, for appellant.

Frank H. Bass, Jr., County Atty., Michael M. Valdez, Asst. County Atty., Conroe, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

These appeals come to us from a single trial involving two defendants, appellant and his daughter, with each defendant being charged with two separate offenses.[1] In the instant appeals, appellant was convicted by a jury for the misdemeanor offenses of Assault "A", and Resisting Arrest "A". The jury assessed punishment at thirty (30) days' confinement in the Montgomery County Jail and a fine of $3000 for the Assault offense, and a fine of $3000 for the Resisting Arrest offense. Appellant consolidates his appeals in a single brief raising the following three points of error:

Point of Error One: There is insufficient evidence to sustain George Wawrykow's conviction for the offense of assault.

Point of Error Two: The trial court erred in allowing the admission of medical records which constituted improper character evidence concerning George Wawrykow.

Point of Error Three: The prosecutor committed fundamental error by injecting his personal belief concerning the guilt of the appellants (sic) into the proceeding during final argument.

Although appellant's initial point of error is worded as a general complaint of insufficient evidence, his brief reflects a very specific and singular argument regarding the piece of evidence that is lacking.[2] The record reflects that the charging instrument alleged that appellant "intentionally, knowingly and recklessly cause[d] bodily injury to another, namely, OFFICER JAMES CHILCUTT, by pushing OFFICER JAMES CHILCUTT on or about his chest with his hands." Appellant argues that under this particular allegation, the State was required to prove "bodily injury" to Officer Chilcutt. The argument continues that at trial the State failed to elicit any testimony that the alleged push to the chest of Officer Chilcutt caused him "physical pain, illness, or any impairment of physical condition,"[3] or that he was hurt in any way by said push to the chest. We have carefully examined the statement of facts and we agree with appellant that direct evidence of "pain" to Chilcutt, or direct evidence that Chilcutt was "hurt" by appellant's push to his chest, is lacking.

 We note at the outset that convictions must be affirmed if the evidence, viewed in the light most favorable to the verdict, with all reasonable inferences and credibility choices made in support of it, is such that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Indeed, juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs

---

1. See our companion opinion in *Wawrykow v. State*, 866 S.W.2d 96 (Tex.App.—Beaumont, 1993, n.p.h.).

2. We note that point of error one makes no reference to any lack of sufficient evidence to sustain his Resisting Arrest conviction. We therefore limit our discussion to the facts and circumstances involving the Assault charge.

3. *See*, Tex.Penal Code Ann. § 1.07(a)(7) (Vernon 1974).

of life when giving effect to the inferences that may reasonably be drawn from the evidence. *United States v. Heath*, 970 F.2d 1397, 1402 (5th Cir.1992), *cert. denied sub nom, Cheng v. U.S.*, — U.S. —, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993). As factfinder, the jury is the exclusive judge of the credibility of witnesses and the weight to be afforded their testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991); TEX. CODE CRIM.PROC.ANN. art. 38.04 (Vernon 1979). Texas law further provides that a jury may believe a witness even though the witness's testimony has been contradicted; and that a jury may accept any part of a witness's testimony and reject the rest. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

Furthermore, lest we commit the same erroneous analysis as was pointed out to us in *Criner v. State*, 860 S.W.2d 84 (Tex.Crim. App.1993), by "disregard[ing] the circumstantial evidence in the record", and by "overlook[ing] the circumstantial evidence which could lead a rational trier of fact to believe beyond a reasonable doubt" that Officer Chilcutt was injured by appellant's alleged actions, we will look to the totality of the circumstances surrounding the incident in order to determine if the jury could have found the element of injury proven beyond a reasonable doubt. *Id.*, op. at 86–87.

In researching the case law on this precise issue, we note the fact that several opinions rely on the following language taken from *Ramirez v. State*, 518 S.W.2d 546 (Tex.Crim. App.1975):

> The terms "physical pain," "illness," and "impairment of physical condition" are terms of common usage, and when construed "according to the fair import of their terms," in the context used in Section 1.07(a)(7), supra, are not "so vague that men of common intelligence must necessarily guess at its meaning and differ as to their application." [citations omitted] A person of ordinary intelligence, who would be law-abiding, can determine with reasonable precision what conduct it is his duty to avoid.

*Id.* at 547–548. We note in passing that the sole issue for consideration in *Ramirez* was not the sufficiency of the evidence but whether the term "bodily injury" was so "vague, uncertain and indefinite" so as to be violative of both the U.S. and Texas Constitutions. *Id.* at 547. Nevertheless, subsequent cases addressing the issue of sufficiency of the State's proof of the "bodily injury" element have relied heavily on the above *Ramirez* language. One such case involving the same issue as is now before us is *Goodin v. State*, 750 S.W.2d 857 (Tex.App.—Corpus Christi 1988, pet. ref'd). In *Goodin*, the complainant took the stand to recount his ordeal but did not testify specifically that he felt "pain" or that the bruises resulting from the encounter with the defendant "hurt." The Corpus Christi Court of Appeals quoted *Ramirez* in arriving at a conclusion that people of common intelligence do understand pain and some of the natural causes of pain, and that a jury made up of such people could find that the complainant did in fact suffer "pain" under a fair interpretation of that term as used in Section 1.07(a)(7). *Id.* at 859. Furthermore, it has been held that the Penal Code's definition of "bodily injury" is purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching. *Lane v. State*, 763 S.W.2d 785, 786 (Tex.Crim.App.1989).

In the instant case, the record before us reflects that both officers testified that appellant was very belligerent and uncooperative as the officers attempted to give him a ticket for parking his vehicle in a fire lane. The following direct examination testimony of Officer Chilcutt describes what took place:

Q. (the State) Okay. What happened then?

A. (Officer Chilcutt) He came out of the van and came by me. And I believe it was right (sic) arm just pushed me aside and came in between me and the van and started toward the sidewalk.

Q. What did you do?

A. Well, I came around back I think through this way and got in front of him. I said "Mr. Wawrykow you need to go back and sign the ticket. Let's get this

taken care of." And he said "I am going to call my attorney." And at this point we were face-to-face again and he pushed my chest.

Q. Okay. Now just to clarify that represents what point in this again?

A. This represents the point where the second time he pushed me. The first time he brushed me aside. The second time he gave me a pretty good push.

Q. You say he gave you a pretty good push. I am going to ask—I am going to ask my boss here to go up there and if you could demonstrate to the jury how hard the Defendant pushed you.

A. The second time?

Q. The second time. If you could just demonstrate that for the jury. And trust me. I would enjoy it—I would want you to do it as hard as he did.

A. You have to keep in mind he was going forward, his forward momentum, and I was backing up. So, just a enough (sic) that got me out of the way.

Q. What was going through your mind at that time?

A. This is a traffic. (sic) This is a parking ticket. What is going on, you know? And he kept repeating "I am going to call my lawyer." And I am thinking he has got a phone in the van. I said he is going to go into Kroger's where all of the people are shopping. I can't let this guy get in Kroger's. And after he pushed me the second time as we were backing up I was telling him "Sir, you are under arrest now" because, I mean, you know, that is once he has assaulted a police officer I have got to place him under arrest. I don't think there is a town in the United States you could push a police officer around and not be arrested.

■ TEX.R.APP.P. 50(d) places the burden on appellant, or party seeking review, to see that a sufficient record is presented to show error requiring reversal. In examining the testimony of Officer Chilcutt above, we note that there was apparently a demonstration before the jury as to how hard Officer

Chilcutt was pushed in the chest by appellant. There is no attempt by appellant to describe the force involved in the demonstration before the jury. We are of the opinion that case law requires us to view this unexplained demonstration before the jury as supporting the jury's verdict. *See, Rogers v. State,* 756 S.W.2d 332, 336 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd); *Gaona v. State,* 733 S.W.2d 611, 613–614, n. 1 (Tex. App.—Corpus Christi 1987, pet. ref'd). Furthermore, based on the entirety of the direct and circumstantial evidence before the jury in the light most favorable to the verdict and in the light of the case authority cited above, we find that any rational factfinder could have inferred Officer Chilcutt sustained "bodily injury," as alleged in the indictment and in the jury's instructions, beyond a reasonable doubt. Point of error one is overruled.

■ With regard to appellant's second point of error complaining of the improper admission of character evidence, appellant is simply wrong in arguing the "evidence was not offered [by the State] to rebut any allegation of calm and gentile (sic) behavior" on appellant's part. The record clearly reflects the following elicited from appellant by *his trial counsel* during appellant's initial direct examination:

Q. (counsel for appellant) Now up to that point where you started to walk off, had you been yelling and cursing at the police?

A. (appellant) No, sir. I don't do that.

Q. Well, what do you mean you don't do that?

A. Well, I don't curse. And I certainly wouldn't yell at somebody. That is not my nature. Anybody that knows me knows that.

The case of *Pyles v. State,* 755 S.W.2d 98 (Tex.Crim.App.), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988), is dispositive of this issue. Like appellant in the instant case, the direct examination testimony of the defendant in *Pyles* created the impression that he was a non-violent person. The Court in *Pyles* decided the issue as follows:

A defendant who takes the stand as a witness may be impeached as any other witness. The defendant's character as a witness was in issue the minute he took the stand. 1 Ray, Texas Practice: Law of Evidence, Secs. 643, 649, pp. 571–574 (3d ed. 1980). The defendant may be impeached by prior inconsistent statements. *Ray, supra,* Sec. 642 (Pocket Supp.1986); Vernon's Ann.Rules Crim.Ev.Rule 612(a). *Id.* at 115. In the instant case, the intent of the State in attempting to introduce State's Exhibit 7 is clear from the following exchange:

THE COURT: As I understand it now you are offering this [State's Exhibit 7] to rebut his testimony that he is a calm man.

MR. VALDEZ (the State): That's right.

As such, the *Pyles* case controls the law on this issue. Point of error two is overruled.

Appellant's third point of error complains of the following portion of the State's final argument to the jury during the guilt/innocence phase of the trial:

This is the law of the case. These are the charges. These are the Defendants. Now Mr. Leger says don't decide merely on the testimony of the officers. We are going to believe the officers. We are going to believe them because they are officers. They are wearing badges and all.

 We note at the outset that appellant made no objection to this argument at trial. TEX.R.APP.P. 52(a) normally requires a party to timely and specifically object in order to preserve a complaint for appellate review. With regard to jury arguments, an exception to this contemporaneous objection requirement exists when the prosecutor's argument is so prejudicial that an instruction to disregard the argument could not cure the harm. *Harris v. State,* 827 S.W.2d 949, 963 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). In the instant case, we find the portion of the State's argument at issue is merely an attempt to restate the previous argument by appellant's trial counsel as it appears in the record as follows:

And I want to ask one other thing to you—of you. If you get back in the jury room and during your deliberations somebody says "We have got to believe these people because they are police officers. We have to support the police officers. We have got to believe them because they are police officers" or "They have a badge or uniform," I want the other of you jurors to turn to that juror and say "Why didn't you raise your hand? Why didn't you respond? Why didn't you speak up before?" Because it may be that we have wasted all of our time here and this case has to be tried again.

Taken in the context of appellant's final argument as set out above, the State's remarks fall within the four areas of permissible jury argument as a response to argument from opposing counsel. *Id.* Appellant's third point of error is overruled, and the judgments and sentences in both cases are affirmed.

AFFIRMED.

BROOKSHIRE, J., concurs.

BURGESS, Justice, dissenting.

I join the majority's disposition of the resisting arrest charge, No. 09–92–151 CR. I respectfully dissent as to the assault charge. My quarrel is not with our Chief Justice as I applaud my brother for cautiously and faithfully following the recent dictates of our reviewing court in *Criner v. State,* 860 S.W.2d 84 (Tex.Crim.App.1992). I would not be so cautious. As Judge Clinton pointed out in his dissenting opinion to denial of appellant's motion for rehearing on State's petition for discretionary review, at page 88, the court of criminal appeals is simply playing lip service to its opinions in *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992) and *Meraz v. State,* 785 S.W.2d 146 (Tex.Crim.App.1990). Either the courts of appeals are the final arbiters of fact questions or they are not; *Arcila* and *Meraz* say they are, *Criner* erodes that position. Either the "factual conclusivity clause" of our state constitution means something or it does not. Under the majority opinion in *Criner,* when the court of criminal appeals agrees with the court of appeals, the clause means what it says; when the court of crimi-

nal appeals disagrees with the lower court, the clause loses its meaning.

Since it is undisputed the state failed to produce any evidence that the physical contact caused bodily injury, i.e., produced any physical pain, illness, or any impairment of physical condition, our analysis must focus on whether there is any circumstantial evidence of bodily injury. Here the majority believes they are *required* to view the demonstration as supporting the jury's verdict, citing *Rogers v. State*, 756 S.W.2d 332, 336 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), and *Gaona v. State*, 733 S.W.2d 611, 613–614, n. 1 (Tex.App.—Corpus Christi 1987, pet. ref'd). (Emphasis mine). Neither case is similar to the one before us. In *Rogers*, the demonstration involved the placement of the accused's hands during a robbery attempt. In *Gaona*, the demonstration involved a witness testifying how the accused held a gun. Here the demonstration apparently concerned the amount of force of the push. However, the amount of force is not controlling, but rather whether the victim received any bodily injury. When the same amount of force is directed against the proverbial "98 pound weakling" and a 250 pound body builder, different results are not only possible, but probable. Even if the prosecutor had asked his "boss" whether the demonstration caused the "boss" bodily injury, this does not constitute evidence the same type of push caused the officer bodily injury. There is a difference between a reasonable inference and speculation. Under the majority's analysis (an analysis I suggest is forced under *Criner*), bodily injury can always be inferred from a push. If that were the case, there would be no requirement for bodily injury, only a forceful touching. Thus, the legislative scheme for grading assaults would shift from harm to the victim to force of the blow from the actor. If such a scheme is to be adopted, that is for the legislature and not for the courts.

Consequently, I would hold there is no evidence of bodily injury to the victim and would reverse and remand for the entry of a judgment of acquittal on the assault charge, No. 09–92–150 CR.

BROOKSHIRE, Justice, concurring.

The information charged that the defendant, George M. Wawrykow, did intentionally, knowingly, and recklessly cause bodily injury to another; namely, Officer James Chilcutt by pushing on or about Chilcutt's chest with his hands. TEX.PENAL CODE ANN. § 1.07(a)(7) (Vernon 1974) entitled "Definitions" provides that bodily injury means physical pain, illness, or any impairment of physical condition. From the evidence in the case, as well as the demonstration, the State met its burden of showing bodily injury. *See and compare Lane v. State*, 763 S.W.2d 785 (Tex.Crim.App.1989); *Ramirez v. State*, 518 S.W.2d 546 (Tex.Crim.App.1975).

The issues and opinions in this appeal demand my attention toward a dissenting opinion filed by Judge Sam Houston Clinton in *Criner v. State*, 860 S.W.2d 84 (Tex.Crim. App.1993). Judge Clinton's dissent is entitled "Opinion Dissenting to Denial of Appellant's Motion for Rehearing on the State's Petition for Discretionary Review". In this instant appeal, *Criner* is referred to in the Court's opinion by Chief Justice Walker and in the dissent by Justice Burgess.

With sincere and deep humility, I state that I am very sorry that Judge Clinton characterizes my dissenting opinion in *Criner* as "frantic". Several authoritative definitions of "frantic" are: "[D]elirious, insane, mad ... almost mentally deranged: nearly mad ... emotionally out of control: overwhelmed with feeling to the point of wildness ...". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 903 (Merriam–Webster, Inc. 1986). I have attempted with care to re-read my dissent in *Criner v. State*, 816 S.W.2d 137 (Tex.App.—Beaumont 1991), *reversed*, 860 S.W.2d 84 (Tex.Crim.App.1993). I had thought then and I think now that the dissent is not "frantic". However, I perceive that Judge Clinton is just as unhappy with the opinion of his own court in *Criner* as he is with my dissent.

Judge Clinton seems to be offended by the fact that my dissent took up "ten pages of Southwestern Reporter". *See Criner v. State*, 816 S.W.2d at 144. Our Ninth Court of Appeals majority opinion occupies about six pages. I submit that a number of Judge

Clinton's opinions are not noted for their brevity.

In *Criner,* I had an honest difference of view and opinion from the majority of the Ninth Court of Appeals and I maintain that I expressed this difference in a respectful manner. My judicial brothers on the Ninth Court of Appeals have not criticized me for the dissent. At least, they haven't characterized it as being "frantic".

The record in *Criner* was somewhat lengthy, I thought, challenging, and very interesting. I, at least, tried in a competent way to discuss the testimony given by the major and important witnesses in the case.

Perhaps the evidence concerning the screwdriver involved was not properly expressed by me, but there was a good deal of testimony about the screwdriver and also about the autopsy report as well as relevant expert medical testimony by a doctor and a serologist.

Mr. Criner made inculpatory statements to a number of witnesses. These witnesses the jury believed. Those statements and the physical facts and the time sequence of events coupled with medical testimony showed, at least by way of probative circumstantial evidence, how the serious bodily injuries to the victim occurred. And the victim met her death thereby. The jury was in a superior position to weigh the totality of the evidence.

In any event, as Judge Clinton has identified and located my dissent in *Criner v. State* in the Southwest Reporter, any reader may decide for himself or herself if the same is frantic. I note, however, that Judge Clinton is a lone dissenter. I will forego any discussion of some other issues raised in Clinton's dissent in *Criner.*

In *Criner,* as shown by the majority opinion of our court and as determined by the Court of Criminal Appeals, the pertinent points of error that were reviewed were on the sufficiency or insufficiency of the evidence to prove the aggravating element of the sexual assault. Since the Ninth Court held that the evidence was insufficient, I thought that a very legitimate function of a dissent was to point out the evidence that I perceived was sufficient. My honest belief was that there was evidence of probative value that the appellant Criner caused serious bodily injury to Diana Ogg, the dead victim, by striking her in the head with a blunt instrument. I took a different view and analysis of the testimony of the medical examiner and of the autopsy report.

My "frantic" dissent in *Criner* is undergirded in substantial part by the testimony of two apparently unprejudiced, unbiased witnesses, Michael Ringo and Terry Hooker. The compelling testimonies of Ringo and Hooker and the exactness of the words spoken and actions displayed by Criner (according to Ringo's testimony) satisfy the sufficiency standard as to the manner. Criner had said that he pulled the girl down in the seat by the hair of her head; Ringo heard Criner say that he (Criner) would kill the girl and then Criner executed and displayed a motion of his hand as in a jabbing motion. Ringo said that Criner was not laughing or joking. The testimonies of Ringo and Hooker, inter alia, again are sufficient to sustain the jury's verdict as to manner.

Importantly also is the testimony of Jeff Pitts. Pitts testified that he was 23 years old and that Criner was working with him on Pitts' family's logging operation. Pitts swore that Criner told him (Pitts) that Criner had picked up a blond-haired girl and had taken her down the road, threatened her with a screwdriver, raped her; and then he left her in the road when he got through. *The record reflected that the victim died as a result of a fracture to her skull due to a blunt trauma to her head and multiple stab wounds to her neck consisting of about eleven puncture wounds.* The medical examiner testified that a screwdriver could have caused the puncture wounds. Puncture wounds are consistent with a screwdriver used in a jabbing manner. Also found were multiple contusions about the left ear. The testimony of a forensic serologist, Maurita Howarth, relating to her findings were significant. Although Judge Clinton condemns my dissent in *Criner* as being "frantic", I respectfully submit that the crucial and compelling testimonies of Ringo, Hooker, the medical examiner who was Dr. Parungao, and the serolo-

gist Howarth are far from frantic. Thus, I submit, by circumstantial and direct evidence the means were shown.

It is glaringly obvious that eight members of the Court of Criminal Appeals writing through Judge White agreed with my dissent's analysis and "gist" of the case and the probative record of the case on the appellant's second point of error urging insufficiency of evidence.

Query: Does Judge Sam Houston Clinton also characterize, in effect, the eight vote majority opinion in his own court as being "frantic"? Are eight of his judicial brethren delirious, mad, almost mentally deranged, emotionally out of control?

In his dissent Judge Clinton agreed that the jury charge tracked the indictment in *Criner.* The indictment alleged that the appellant Criner caused serious bodily injury by striking his victim in the head with a blunt instrument, the nature of which is unknown to the grand jury. Judge Clinton's dissent concedes, I submit, that appellant Criner agreed that there was evidence that the victim suffered a blunt trauma injury to the head, but that the appellant took the position that there was no indication in the record that the injury was caused by Criner when the victim was struck in the head by a blunt instrument or when the dead girl's head hit an instrument or a part of the truck. An injury caused by trauma can be reasonably said to be equivalent to an injury caused by striking. Judge Clinton opines the matter may be one of semantics. Concerning who did it, the inculpatory confession-like statements of Criner to several witnesses, I submit, is evidence that meets the test set out in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) on that point.

Then Judge Clinton charges "but this court [Court of Criminal Appeals] on original submission conducted no independent analysis to demonstrate that the evidence is not insufficient to show the particular manner and means of inflicting serious bodily injury alleged in the indictment...." The indictment alleged that the means was a blunt instrument *the nature of which is unknown to the grand jury.* The manner is by striking the victim in the head. It is significant and very interesting to note that in an unnumbered footnote designated by an asterisk that Judge Clinton concedes:

> The gist of Justice Brookshire's dissent is that the evidence is sufficient to support a jury conclusion that it was appellant [Criner] who somehow caused the blunt trauma injury to the victim's head. *This Court believes the evidence supports no other inference, and I agree.* (emphasis added)

Then Judge Clinton's dissent criticized Judge Bill M. White for opining that "[i]n applying the 'reasonable alternative hypothesis' analysis, '[t]he correct procedure involves accepting the inculpatory circumstances ... and then asking if there is a reasonable hypothesis other than guilt which would also account for such circumstances.' *Girard v. State,* 631 S.W.2d 162, at 164 (Tex.Cr.App. 1982)." But it is conceded that *Clinton's dissent does not characterize White's opinion as being "frantic".* Judge Clinton further indicts the Court of Criminal Appeals' opinion with this statement: "We seem to grant a disproportionately high number of State's petitions for discretionary review to review decisions of the courts of appeals holding the evidence to be illegally insufficient, and for no other reason than that we disagree with the lower court's particular application of the law to the facts. For all the Court's gloss in its opinion on original submission, the instant cause is but an example."

I submit that the application of the law to the facts implicates the method and standard of applying and matching *rules of law.* As the caretaker of Texas law, the Court of Criminal Appeals in *Criner* explains that the Ninth Court had never presented an alternative hypothesis, that the Ninth Court failed to explain how the record raised the issue of the existence of an outstanding reasonable hypothesis to support an inference other then the guilt of appellant Criner. Furthermore, *the Ninth Court disregarded the circumstantial evidence in the record.* The dissenter on the High Court agrees that the principal role of the Court of Criminal Appeals is as a court of last resort as the caretaker of Texas law. And that is precisely what the Court of

Criminal Appeals did in its opinion in *Criner*—the High Court applied Texas law. Yet Judge Clinton indicts his brethren by wondering why the Court of Criminal Appeals would go out of its way to rectify some flaw, either real or invented, in the application of an "analytical construct". Of course, no part of Judge Clinton's dissent in *Criner* is "frantic".

An outstanding hypothesis to be recognized as being reasonable, must be raised by the evidence in the record. *Nilsson v. State*, 477 S.W.2d 592 (Tex.Crim.App.1972). In order for a reasonable hypothesis to be outstanding, there must be no competent evidence to the contrary. *Id. See and compare Nelson v. State*, 848 S.W.2d 126 (Tex. Crim.App.1992).

In *Nelson v. State*, the Court of Criminal Appeals in a carefully analyzed and excellently written opinion determined that certain circumstantial evidence sustained a verdict and conviction of capital murder including the death penalty. The Court carefully distinguished between the point in time in which the accused, Nelson, formulated his intent (supported by the evidence) to take the victim's property—this intent being critical to differentiating between his commission of capital murder in the course of a robbery and the commission of a first degree murder later followed by a theft. The Court of Criminal Appeals then reasoned that the ultimate issue was whether any rational trier of fact could be justified in finding from the evidence taken as whole that the accused Nelson intended to take his victim's property before or as he murdered the victim.

The Court recognized that it was possible to have murder followed by a subsequent theft without having murder in the course of a robbery. Nelson, under the entire record, was having financial difficulties and a drug problem; Nelson went through the deceased's property and took some valuables including $50. Nelson later took Howard's (the victim) car. The Court reasoned that a rational juror could have inferred from the victim's possession of drugs and Nelson's drug use that Nelson went to Howard's apartment in order to assault him or take his drugs or obtain money for drugs. I submit the Court of Criminal Appeals was acting prudently as a conscientious, careful, caretaker of Texas law both substantial and procedural in *Criner, Nilsson,* and *Nelson, supra.*

Our dissenter, Justice Burgess in *George Wawrykow v. State,* confesses that he would not be "so cautious" as our Chief Justice in "following the recent dictates of our reviewing court in *Criner v. State*, 860 S.W.2d 84 (Tex.Crim.App.1992)". Justice Burgess agrees with Judge Clinton that the Court of Criminal Appeals is simply playing lip service to its opinion in *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992) and *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App. 1990). Our dissenter declares:

> Either the courts of appeals are the final arbiters of fact questions or they are not; *Arcila* and *Meraz* say they are, *Criner* erodes that position. Either the "factual conclusivity clause" of our state constitution means something or it does not. Under the majority opinion in *Criner,* when the court of criminal appeals agrees with the court of appeals, the clause means what it says; when the court of criminal appeals disagrees with a lower court, the clause loses its meaning.

This criticism by Justice Burgess of the Court of Criminal Appeals opinion in *Criner* is unjustified and unsound because the High Court was acting as caretaker of Texas law.

Hence, the entire record in *Criner* supports the jury's verdict and the entire record in *Wawrykow* supports the jury's verdict. And thus, the circumstantial evidence in the *Criner* and *George Wawrykow* cases are certainly not speculation. Justice Burgess either misquotes or misapprehends the record by stating in a footnote and relying thereon that it is speculation that a "push" to the chest will cause physical pain. The record shows in *George Wawrykow* that more than a "push" was proved by the prosecution.

In this instant *George Wawrykow* case, the jury was in a much superior position to judge the demonstration and the details of what it showed than an appellate court. This is true because the demonstration was not videotaped nor were any motion pictures made

thereof. No audio tape was made. Also, the verbal description of the pushes and the shoves, I think, was some evidence and therefore, our Ninth Court's opinion is not based solely on the demonstration.

Our Ninth Court correctly recites that convictions are to be affirmed if the evidence, viewed in the light most favorable to the verdict (buttressed and undergirded by all reasonable inferences and credibility choices having been made in support of the verdict) is such that any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *Jackson v. Virginia, supra.* The actual, important testimony as set out in the majority opinion, I think, certainly by reasonable and logical inferences, demonstrates physical pain. Physical pain has been declared a term of common usage and according to the fair import of this term, is not so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *See Ramirez v. State,* 518 S.W.2d 546 (Tex.Crim.App.1975). *See and compare Goodin v. State,* 750 S.W.2d 857 (Tex.App.—Corpus Christi 1988, pet. ref'd). People and jurors of common intelligence can and do understand pain and some of the natural causes or origins of physical pain. *Id.*

The record shows more than mere touching and more than offensive touching. The appellant pushed the officer's chest. There was a second time that the appellant pushed and the second time the push was a pretty good push. I opine that a rational juror could have determined pain and physical pain resulted. *Jackson v. Virginia, supra.*

Thus, our Ninth Court's opinion is not solely based upon the demonstration. Thus, the Court's opinion is based upon the totality of the direct and circumstantial evidence before the jury as well as the demonstration. The record then, when properly analyzed, supports the verdict. I concur that any rational finder of fact could have found that Officer Chilcutt sustained bodily injury as alleged.

I concur in the judgment and sentence of George Wawrykow.