TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00584-CR






Wardell Moore, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 97R-017, HONORABLE DAN R. BECK, JUDGE PRESIDING







 A jury convicted Wardell Moore of the aggravated assault of Allen Jackson. The
jury assessed a sentence of five years in prison and a $2,000 fine. By his sole point of error,
Moore challenges the legal sufficiency of the evidence to prove that the assault involved the use
of a utility knife. We will affirm the judgment.

 When reviewing a challenge to the legal sufficiency of the evidence, we view the
evidence in the light most favorable to the prosecution to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson
v. Virginia, 443 U.S. 307, 318-19 (1979). The jury is the exclusive judge of the credibility of
the witnesses and the weight to be given their testimony. See Miller v. State, 909 S.W.2d 568,
593 (Tex. App.--Austin 1995, no pet.).

 The assault occurred at a birthday party for Carl Jarmine held at Glance Jarmine's
house. The party began at 6 p.m., Moore arrived around 8 or 9 p.m., and Moore assaulted
Jackson around 2 a.m. The eyewitnesses of the incident, including Moore, are all cousins or more
closely related. They considered each other friends, though Jackson said he stopped socializing
with Moore. Carl and Glance Jarmine are brothers. Sherry Allen and Allen Jackson are step-siblings.

 Glance testified that, shortly after Moore arrived at the party, Jackson got upset
because Moore would not give him some whiskey; Glance said that nothing came of that incident. 
Around 2 a.m., Moore and Jackson were among several people standing around a truck talking. 
Without any evident provocation, Moore, standing slightly behind Glance, swung his fist over
Glance's shoulder and hit Jackson in the mouth, causing heavy bleeding. Jarmine testified that
Jackson did not fall or contact anything or anybody else that could have caused the bleeding. 
Glance restrained Jackson from retaliating. He said Jackson is about six feet, one inch tall, while
Moore is about five feet, seven or eight inches tall.

 Carl recounted a similar chronology and told what happened when he drove Moore
home afterwards. He said Moore took a single-edge razor blade out of his mouth and said, "See,
nobody can mess with Wardell Moore." On cross-examination the following exchange occurred:


Q. Where did [Wardell get the razor]?


A. I don't know where he got it from.


Q. Did he take it out of a box cutter? Did you see him take it out of a box cutter?


A. Yes, sir.


Q. Can you tell me what this is?


A. Razor blade, box cutter.


Q. How do you get the razor out?


A. Screw it out.


Q. Did Wardell have a screwdriver?


A. Huh-uh.


Q. He didn't have a box cutter in his mouth?


A. No, a razor blade. 


Carl said he had seen Moore with a razor blade in his mouth before. He also testified that Jackson
is known for occasional outbursts of a violent temper.

 Sherry Allen testified that she saw Moore go to the side of the house just before
the assault and take something out of his pocket; she did not see what it was. He came back from
the house and cut Jackson. Sherry said she heard Jackson ask Moore for a drink, heard Moore
decline and go to the side of the house, then return and strike Jackson. She did not see Jackson
make any provocative moves or gestures toward Moore, nor did she hear the men argue. She also
testified, contrary to the Jarmine brothers, that Jackson did not try to retaliate. She testified that
she knew Moore to carry a razor.

 Jackson denied being angry that Moore would not give him any whiskey. He at
first said he knew of no reason for Moore to attack him, but later conceded that Moore might have
attacked him because Moore was rumored to be having an affair with Jackson's wife. He also did
not believe he had to be restrained from chasing Moore.

 Moore testified in his own defense. He said that he talked to and worked for his
cousins, but nothing more. He said that a lot of his cousins "accuse their women of going with
me." Moore testified that when he declined to give Jackson any whiskey, Jackson threatened to
hit Moore with a 40-ounce bottle of Old English beer. Moore said he ducked and punched
Jackson. He denied that he had a razor blade in his mouth that night or at any other time. He
also said that Sherry had accused him that day of having an affair with Jackson's wife.

 On rebuttal, Glance testified that Jackson was holding a 12-ounce bottle when he
was struck and that he recalled no 40-ounce bottles at that party. He did not recall Jackson
threatening to hit Moore with the beer bottle. On rebuttal, Sherry denied accusing Moore of
having an affair. She also denied the presence of any 40-ounce beer bottles.

 Nurse T.J. George testified that she treated Allen Jackson for a cut to the left side
of his face just below the lip. She said the wound was caused by something straight and sharp. 
She said Jackson told her he had been cut by a box cutter; she testified that a box cutter had a
razor edge and was capable of inflicting serious bodily injury or death. She acknowledged that
the wound could have been caused by other sharp objects.

 Viewed in the light most favorable to the judgment, this evidence is legally
sufficient to support the judgment. There is no dispute that Moore hit Jackson or that Jackson was
cut. The only dispute on appeal is the sufficiency of the proof that Moore used a utility knife to
commit the assault. Though no one saw a weapon in Moore's hand when he hit Jackson, there
was ample evidence that Moore's action caused the cut on Jackson's face. The nature of the
wound supports a conclusion that Moore used a straight, sharp blade. The inference that Moore
used a single-edge razor blade is supported by Carl's testimony that Moore, after removing the
razor blade from his mouth, said "See, nobody can mess with Wardell Moore." The inference
that the blade came from a utility knife is supported by Carl's testimony that he saw Moore take
the blade out of a box cutter. Though there was no testimony that a box cutter is also known as
a utility knife, the jury heard the testimony and was entitled to use its common knowledge and
experience to bridge that gap in terminology. See Wawrykow v. State, 866 S.W.2d 87, 89 (Tex.
App.--Beaumont 1993, pet. ref'd); see also United States v. Heath, 970 F.2d 1397, 1402 (5th
Cir.1992), cert. denied sub nom, Cheng v. U.S., 507 U.S. 1004 (1993). The jury was entitled
to find that Moore's use of the razor blade from a utility knife--the primary cutting surface in the
implement--constituted using the utility knife to assault Jackson.

 We overrule the point of error and affirm the judgment.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: October 14, 1999

Do Not Publish


 Sherry Allen testified that she saw Moore go to the side of the house just before
the assault and take something out of his pocket; she did not see what it was. He came back from
the house and cut Jackson. Sherry said she heard Jackson ask Moore for a drink, heard Moore
decline and go to the side of the house, then return and strike Jackson. She did not see Jackson
make any provocative moves or gestures toward Moore, nor did she hear the men argue. She also
testified, contrary to the Jarmine brothers, that Jackson did not try to retaliate. She testified that
she knew Moore to carry a razor.

 Jackson denied being angry that Moore would not give him any whiskey. He at
first said he knew of no reason for Moore to attack him, but later conceded that Moore might have
attacked him because Moore was rumored to be having an affair with Jackson's wife. He also did
not believe he had to be restrained from chasing Moore.

 Moore testified in his own defense. He said that he talked to and worked for his
cousins, but nothing more. He said that a lot of his cousins "accuse their women of going with
me." Moore testified that when he declined to give Jackson any whiskey, Jackson threatened to
hit Moore with a 40-ounce bottle of Old English beer. Moore said he ducked and punched
Jackson. He denied that he had a razor blade in his mouth that night or at any other time. He
also said that Sherry had accused him that day of having an affair with Jackson's wife.

 On rebuttal, Glance testified that Jackson was holding a 12-ounce bottle when he
was struck and that he recalled no 40-ounce bottles at that party. He did not recall Jackson
threatening to hit Moore with the beer bottle. On rebuttal, Sherry denied accusing Moore of
having an affair. She also denied the presence of any 40-ounce beer bottles.

 Nurse T.J. George testified that she treated Allen Jackson for a cut to the left side
of his face just below the lip. She said the wound was caused by something straight and sharp. 
She said Jackson told her he had been cut by a box cutter; she testified that a box cutter had a
razor edge and was capable of inflicting serious bodily injury or death. She acknowledged that
the wound could have been caused by other sharp objects.

 Viewed in the light most favorable to the judgment, this evidence is legally
sufficient to support the judgment. There is no dispute that Moore hit Jackson or that Jackson was
cut. The only dispute on appeal is the sufficiency of the proof that Moore used a utility knife to
commit the assault. Though no one saw a weapon in Moore's hand when he hit Jackson, there
was ample evidence that Moore's action caused the cut on Jackson's face. The nature of the
wound supports a conclusion that Moore used a straight, sharp blade. The inference that Moore
used a single-edge razor blade is supported by Carl's testimony that Moore, after removing the
razor blade from his mouth, said "See, nobody can mess with Wardell Moore." The inference
that the blade came from a utility knife is supported by Carl's testimony that he saw Moore take
the blade out of a box cutter. Though there was no testimony that a box cutter is also known as
a utility knife, the jury heard the testimony and was entitled to use its common knowledge and
experience to bridge that gap in terminology. See Wawrykow v. State, 866 S.W.2d 87, 89 (Tex.
App.--Beaumont 1993, pet. ref'd); see also United States v. Heath, 970 F.2d 1397, 1402 (5th
Cir.1992), cert. denied sub nom, Cheng v. U.S., 507 U.S. 1004 (1993). The jury was entitled
to find that Moore's use of the razor blade from a utility knife--the primary cutting surface in the
implement--constituted using the utility knife to assault Jackson.

 We overrule the point of error and affirm the judgment.