In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00162-CR


______________________________




GREGORY McGILL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


Bowie County, Texas


Trial Court No. 01-F-245-005




 




Before Morriss, C.J., Ross and Cornelius,* JJ.


Opinion by Justice Cornelius


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 Appellant, Gregory McGill, was convicted, in a trial to the court, of possession of
cocaine, a controlled substance. His punishment was assessed by the trial court at one
year's confinement in a state jail.

 On appeal, appellant contends (1) the trial court erred in overruling his motion to
suppress evidence, particularly an inculpatory oral statement he allegedly made while in
custody; and (2) there is legally and factually insufficient evidence to support his conviction. 
We overrule these contentions and affirm the judgment.

 On June 16, 2000, appellant and his teenaged son were traveling in appellant's
automobile from Dallas to Texarkana. Appellant was driving, and his son was in the front
passenger's seat. Near Nash, Texas, appellant ran his car off the service road, went
through a ditch, hit a concrete culvert, went over a concrete drive, and came to a stop in
a ditch. Officer Troy Ballard was dispatched to investigate the accident. When he arrived,
he discovered appellant's car in the ditch. Appellant was standing outside the car, and his
son was still in the car. Ballard checked appellant and his son for injuries and found no
serious injuries. He did find appellant to be very disoriented, to have a slight odor of
alcohol on his breath, and to appear to be under the influence of some intoxicant. Ballard
asked for and received appellant's driver's license, insurance, and registration information,
and then checked with the dispatcher to see if appellant had any outstanding warrants. 
He was advised that there was an outstanding warrant on appellant from Dallas for a
community supervision violation from a conviction for possession of a controlled substance. 
Ballard placed appellant under arrest on the outstanding warrant. Two other officers came
to the scene to assist Ballard. Appellant was under arrest, and the car could not be
impounded because it was damaged and inoperable, so the officers conducted an
inventory search of the vehicle at the scene. Drug dogs alerted on the vehicle, and the
officers found cocaine and drug paraphernalia under the driver's seat. The officers
informed appellant then that he was also being arrested on a charge of possessing
cocaine. Appellant told the officers that the cocaine was not his. Because appellant's son
was also riding in the car, the officers arrested him as a codefendant on the drug charge. 
Officers testified that, at that time, appellant told them the drugs were his and he was solely
responsible for them. Appellant denied saying the drugs were his.

 It is undisputed that the officers did not give appellant his Miranda (1) warnings before
he allegedly admitted that the drugs and drug paraphernalia were his. Appellant thus
contends that, because he was under arrest when he allegedly made the statement and
had not been warned as required by Miranda, the admission should have been
suppressed. The State argues that, because appellant's inculpatory statement was
spontaneous and was not the result of custodial interrogation, it was admissible in
evidence. We agree.

 Oral statements by a person who is under arrest are admissible, even if the accused
was not given Miranda warnings, if the statements are voluntary and do not stem from
custodial interrogation. Rhode Island v. Innis, 446 U.S. 291, 300 (1980); Morris v. State,
897 S.W.2d 528, 531 (Tex. App.-El Paso 1995, no pet.). The undisputed evidence here
is that the only conversation the officers had with appellant was when Ballard asked him
how the accident happened and asked him to provide his driver's license, registration, and
insurance information. These were routine and appropriate questions, and Miranda
warnings were not required. The officers testified they never had any conversation with
appellant about the cocaine and never questioned him at all after he was arrested. 
Moreover, appellant himself confirmed this when he testified on direct examination that no
one asked him anything and no officer conversed with him about the controlled substance
or drug paraphernalia found in his vehicle. 

 However, interrogation in the Miranda context includes not only explicit questioning,
but any words or actions by law enforcement officers, other than those normally attendant
to arrest and custody, that the officers should know are reasonably likely to elicit an
incriminating response from a suspect. Rhode Island v. Innis, 446 U.S. at 301; Murray v.
State, 864 S.W.2d 111, 114 (Tex. App.-Texarkana 1993, pet. ref'd). Appellant contends
the officers arrested his son only after he, appellant, denied that he owned the cocaine,
and that the action of the officers in arresting his son after he denied that the cocaine was
his, was an act that was reasonably likely to elicit his subsequent admission that the
cocaine was his. The evidence, however, does not support appellant's contention in this
regard. The officers testified that it was routine practice to arrest those, other than the
driver, who are in a car containing drugs and have some measure of control over the
vehicle's contents. They testified that appellant's son was simply arrested as a
codefendant. Moreover, even appellant confirmed that his actions were unaffected by his
son's arrest. He testified on direct examination as follows:

 Q. [Defense Counsel]: And Mr. McGill, at some point did the other
officers come up and engage in conversation with you about the controlled
substance they found in your vehicle?

 

 A. [Appellant]: No.

 

 Q. Was your son threatened to be placed under arrest?

 

 A. No.

 

 Q. And did you overhear or see any of the officers take action to
arrest your son?

 

 A. No, I did not.

 

 Q. Okay. Was he handcuffed?

 

 A. No. Never.

 

 Q. Did any of the three officers inform you that they were going to
arrest your son?

 

 A. No.

 

 Q. Was your son ever placed in one of the cruisers?

 

 A. No, he was not.

 Q. During the time that they had run this search, and found this
alleged substance in your car, where was your son?

 

 A. He was standing out in front of the car that I was sitting in the
back seat of, on the phone calling my uncle in Texarkana to come and pick
him up.


 Q. And you're quite sure, Mr. McGill, that your son was never
threatened to be, or it was never communicated to you that he would ever be
placed under arrest?

 A. No.

 

 We find legally and factually sufficient evidence to support the trial court's finding
that the admission appellant made that the cocaine was his and that he was solely
responsible for it was not the result of custodial interrogation, and therefore was admissible
in evidence.

 Appellant also contends there is legally and factually insufficient evidence to support
his conviction. In reviewing the legal sufficiency of the evidence, we view all of the
evidence in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. 
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). In reviewing the factual
sufficiency of the evidence, we view all of the evidence in a neutral light and determine
whether the evidence, both for and against the verdict, is so weak as to undermine
confidence in the verdict, or the proof of guilt, although adequate if considered alone, is
greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).

 Because appellant was not in personal, exclusive possession of the cocaine, he
contends there are insufficient facts to affirmatively link him to the contraband. See Brown
v. State, 911 S.W.2d 744 (Tex. Crim. App. 1995). The courts have identified twelve to
fourteen factors that may affirmatively link a person to contraband. Several of these
factors are present in this case, as shown by the evidence: (1) appellant was present at
the place where the contraband was found when the search was conducted; (2) he was
the owner of, and was in control of, the vehicle where the contraband was found; (3) as the
contraband was found under the driver's seat of the vehicle, appellant was in close
proximity to and had access to, the contraband; (4) he was under the influence of an
intoxicant when arrested; and (5) other contraband than the drug was present in close
proximity to appellant (drug paraphernalia). This evidence is more than ample to
affirmatively link appellant to the contraband. Moreover, appellant spontaneously and
voluntarily admitted that the drugs were his. We find the evidence legally and factually
sufficient to support the conviction.


 For the reasons stated, we affirm the trial court's judgment.


 William J. Cornelius*

 Justice


*Chief Justice, Retired, Sitting by Assignment

Date Submitted: September 8, 2003

Date Decided: September 9, 2003

Do Not Publish

1. Miranda v. Arizona, 384 U.S. 436 (1966).


in by pushing Smith.
            The particular challenge in this case is that the State failed to elicit any direct testimony that
Smith experienced any pain as a result of being pushed by Murrieta. So, we turn to the record to
determine whether there is legally and factually sufficient


 circumstantial evidence in the record to
support the implicit finding that Murrieta caused Smith physical pain by pushing him, thus
supporting Murrieta's conviction. We conclude there is sufficient evidence, and we affirm the trial
court's judgment.
            A person commits the offense of "assault" if the person "intentionally, knowingly, or
recklessly causes bodily injury to another . . . ." Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon Supp.
2005). If the action causes "physical pain," "bodily injury" has occurred under the statute. Tex. Pen.
Code Ann. § 1.07(a)(8) (Vernon Supp. 2005). This "purposefully broad" definition of "bodily
injury" includes physical pain from "even relatively minor physical contacts so long as they
constitute more than mere offensive touching." Wawrykow v. State, 866 S.W.2d 87, 89 (Tex.
App.—Beaumont 1993, pet. ref'd) (citing Lane v. State, 763 S.W.2d 785, 786 (Tex. Crim. App.
1989)).
            The indictment in this case alleged that, on June 29, 2005, Murrieta "intentionally,
knowingly, and recklessly cause[d] bodily injury to [Deputy] Smith by pushing and shoving . . .
Smith with his hands . . . ."
            Smith testified during the guilt/innocence phase of trial that he had been asked to serve a
warrant on Murrieta June 29, 2005. Smith entered Murrieta's home and was directed to a back
bedroom by another occupant of the house. Smith eventually found Murrieta standing inside a
closet. Smith "reached in and grabbed [Murietta] by the arm and told him he was under arrest." 
            Murrieta did not surrender peacefully, but instead struggled with Smith. Initially fighting
Smith, Murrieta tried to twist and push away from Smith. Eventually, Murrieta was able to turn
away from Smith and, using the nearby wall for leverage, push Smith away, thereby breaking free. 
Smith and a prosecutor demonstrated this push for the jury. The demonstration was partially
narrated: "(demonstrating); he turned around and just went." Murrieta "[p]ushed [me] right there." 
In describing this push, Smith testified the push was "hard enough to move" him and "knocked me
all the way back." Smith did not affirmatively say he had felt pain from this push.
            According to his continued testimony, after Murrieta's initial escape from Smith's grasp,
Smith eventually caught up with Murrieta while they were still inside the house, grabbed Murrieta,
and attempted to regain control over him. Nevertheless, Murrieta was again able to break free by
pushing Smith away, as with the first push. This second push was hard enough to have moved Smith
physically. But again, Smith did not testify that he felt pain from this second push. Smith did testify
that, after the second push, he resorted to using his pepper spray to attempt to subdue Murrieta. 
Other officers were eventually able to locate and arrest Murrieta after a short search in a nearby field. 
Murrieta testified at the guilt/innocence stage of the trial and denied ever pushing Smith. 
            By its verdict, the jury apparently believed Smith's version of events (that Murrieta had
pushed Smith) and disbelieved Murrieta's version (that he had not pushed Smith). The question on
appeal is whether, without any direct testimony concerning pain, there is legally and factually
sufficient evidence that Smith suffered any "physical pain" from either of Murrieta's pushes.
            A jury may infer that a victim actually felt or suffered physical pain because people of
common intelligence understand pain and some of the natural causes of it. Randolph v. State, 152
S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.). When considering whether evidence is
sufficient to establish that a victim suffered pain, juries may use common sense and apply common
knowledge, observation, and experience gained in the ordinary affairs of life, using inferences that
may reasonably be drawn from evidence. Wawrykow, 866 S.W.2d at 88–89 (rational fact-finder
could have inferred pushes to chest caused "physical pain") (citing United States v. Heath, 970 F.2d
1397, 1402 (5th Cir. 1992)); see also Goodin v. State, 750 S.W.2d 857, 859 (Tex. App.—Corpus
Christi 1988, pet. ref'd) (people of common intelligence understand what naturally causes physical
pain).
            In Wawrykow,


 the State asked the victim and the district attorney to provide the jury with
an in-court demonstration of how the defendant had pushed the victim in the chest. The State did
not, however, elicit any oral testimony that the victim had experienced pain from that push. 
Wawrykow, 866 S.W.2d at 88. The court of appeals nevertheless affirmed the conviction because
the court said the jury was free to infer from the unnarrated, in-court demonstration that the victim
suffered pain from the pushes. Id. at 90. We agree with our sister court that the jury may so
conclude, based on the similar evidence of pushes and similar in-court demonstrations, even without
direct testimony of resulting pain.
            While it is always preferable for the complainant to affirmatively state he or she experienced
pain, illness, or an impairment of physical condition during the alleged assault, such testimony is not
required to sustain a conviction. See, e.g., Lane, 763 S.W.2d at 786–87 (jury may infer bodily injury
from bruise caused by twisting wallet from victim's hand); Wead v. State, 94 S.W.3d 131, 134–35
(Tex. App.—Corpus Christi 2002), rev'd on other grounds, 129 S.W.3d 126 (Tex. Crim. App. 2004)
(jury could infer from photographs showing swollen eye that victim experienced pain); Goodin, 750
S.W.2d at 859 (jury may infer bruising and strained muscles were painful); Arzaga v. State, 86
S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (no testimony the assault victim suffered pain
from being struck; jury permitted to draw reasonable inference that victim hurt from being hit in face
by husband).


 We are also mindful that the standards of review for legal and factual sufficiency
require us to examine all the evidence, including circumstantial and demonstrative evidence, to
determine whether there is evidence on which a jury could rationally conclude the State had proven
its case. See Jackson, 443 U.S. at 319; Johnson, 23 S.W.3d at 7; Threadgill, 146 S.W.3d at 664;
Criner v. State, 860 S.W.2d 84, 86–87 (Tex. Crim. App. 1992) (holding circumstantial evidence in
record could lead rational jury to believe defendant assaulted victim).
            Given Smith's testimony concerning the context of the struggle between Smith and Murrieta,
Smith's in-court demonstration of the first push he received from Murrieta, and the testimony that
the push knocked Smith "all the way back," we cannot say there is no evidence to support the jury's
verdict. Nor can we say the evidence supporting the jury's conclusion that Smith suffered some
degree of pain as a result of being pushed is greatly outweighed by any contrary evidence or is so
weak that the conviction is clearly wrong or manifestly unjust. We may not reweigh the evidence
and substitute our interpretation for the jury's interpretation of that evidence. Santellan v. State, 939
S.W.2d 155, 164–65 (Tex. Crim. App. 1997). Accordingly, we overrule Murrieta's challenges to the
legal and factual sufficiency of the evidence to support his conviction.
            We affirm the trial court's judgment.
 

                                                                        Josh R. Morriss, III
                                                                        Chief Justice


Date Submitted:          April 10, 2006
Date Decided:             June 14, 2006

Do Not Publish