In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-076 CR


____________________



MIKE BOUNDS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 411th District Court


San Jacinto County, Texas


Trial Cause No. 9197






MEMORANDUM OPINION


 Appellant Mike Bounds was indicted for aggravated sexual assault of a child younger
than fourteen years of age. Count one alleged Bounds penetrated the child's anus with his
sexual organ, count two alleged Bounds penetrated the child's anus with his fingers, count
three alleged Bounds penetrated the child's sexual organ with his fingers, and count four
alleged Bounds penetrated the child's sexual organ with his sexual organ. A jury convicted
Bounds of counts one and three and assessed punishment at fifteen years of confinement for
each count. In this appeal, Bounds contends the evidence of penetration was legally and
factually insufficient to support his conviction. We affirm.

Background


 On direct examination, the child testified as follows:

 Q. (By [prosecutor]) During this time, Christmas break 2004, did [the
defendant] Mike Bounds, touch you in places he shouldn't have
touched you?


 A. Yes.


 Q. Okay. And I am showing you two sets of drawings. Okay. And the
first set has a drawing of a girl. Do you recognize that?


 A. Yes.


 Q. Okay. And, if you could, show me one at a time where the defendant
touched you. . . .


 A. (Witness indicating.)


 . . . .


 Q. (By [prosecutor]) I'm putting a circle around that; is that correct?


 A. Yes.


 Q. Did he touch you at another place he shouldn't have touched you?


 A. (Witness indicating.)


 Q. (Indicating.)


 A. (Moving head up and down.)


 Q. Okay. Is that correct?


 A. Yes.


 Q. And would -- would it also be correct over here?


 A. Yes.


 Q. Okay. Now, did he touch you anywhere else that he shouldn't have
touched you?


 A. Here.


 Q. Okay. And now, am I circling the correct place?


 A. Yes.


 Q. Now, I have a drawing of a man over here. Do you see that?


 A. Yes.


 Q. Now, one at a time, can you show me what he touched you with?


 A. That.


 Q. Okay. And let me ask you: Where did he put that?


 A. Here.


 Q. Okay. You are pointing to the first figure?


 A. Yes.


 Q. And let me ask you: What do you call that?


 A. My monkey.


 Q. Okay. And is another word for that "vagina"?


 A. Yes.


 Q. And did he touch you anywhere else with that? And what do you call
that on the -- [the defendant]?


 A. I don't remember.


 Q. But it is circled?


 A. Yes.


 Q. And can I put a "No. 1" on that?


 A. Yes.


 . . . .


 Q. Okay. Okay. Did he touch you with his hands?


 A. Yes.


 Q. Can I circle each hand?


 A. Yes.


 Q. Was it both hands?


 A. Yes. Yes.


 Q. Okay. Now, did he touch you -- and this looks like --


 A. Yes.


 Q. -- your rear or --


 A. Yes.


 Q. Okay. Would that be your anus?


 A. Yes.


 Q. What did he touch you with there?


 A. This.


 Q. Okay. That's what is marked No. 1; is that right?


 A. Yes.


The body part labeled as "1" on the diagram of the male figure was the penis. During cross-examination, the child testified that the defendant touched her "butt" with his penis. She also
testified that Bounds "used baby oil and then he started raping me[.]"

 The State introduced into evidence the medical records pertaining to nurse Karen
Trevino's examination of the child at Children's Safe Harbor Medical Services. When
Trevino interviewed the child, the child told Trevino that Bounds had touched her vagina
with his hands. The child also reported that the encounter hurt, and she bled. The child
reported that Bounds's fingers touched her sexual organ and anus, Bounds's sexual organ
touched her sexual organ, and Bounds used baby oil as a lubricant. Trevino's physical
examination of the child revealed redness of the child's perianal area.


 The State also introduced into evidence the records from the child's school. Included
in the child's school records were copies of voluntary statements made by the school's
counselor, Shelia Gail Page, and assistant principal, Tammy Glaze. According to Page's
statement, the child told her the following, in pertinent part:

 [The child] went to use the restroom [and] when she came back [Bounds] was
in the bedroom with his pants and unde[r]wear off. He grabbed [the child][,]
pulled down her pants[,] and threw her down on the bed. He pushed her legs
apart. She said her legs still hurt there and she pointed to her thigh area. [The
child] started crying and [Bounds] slapped her on the face. She told [Bounds]
to stop and that he was not suppose[d] to do that to [her]. He said he didn't
care. . . . [Bounds's] private area had a thing in front and those things in back. 
She said it was about as long as my name plate (about 10 inches long) and was
standing up. He then put his private part in her.


Glaze's statement indicates that the child reported the following:

 [The child] went to the restroom and when she came out, [Bounds] had his
pants and underw[ear] down. She described his private part as a thing in front
and those things in back, about a foot long and standing up. [The child] tried
to run away. He pushed her on the bed and slapped her on the face and back. 
She was crying. He squeezed her thighs. . . . [The child] said it still hurt. He
pulled her legs apart. She told him to stop. She said to him that he wasn't
suppose[d] to do that to [her][]. He said he didn't give a care (used cuss
words). [The child] had on blue jeans and [a] top. He pulled her pants down. 
He put his private part into her. He also put his finger into her.


Standards of Review


 In reviewing an issue of legal sufficiency, an appellate court views the evidence in the
light most favorable to the verdict to determine whether a rational fact finder could have
found each element of the offense beyond a reasonable doubt. Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003); Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim.
App. 2001) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979)). When addressing an issue of factual sufficiency, the appellate court asks whether
"a neutral review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine confidence in the jury's determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also King v. State,
29 S.W.3d 556, 563 (Tex. Crim. App. 2000). An appellate court "must give due deference
to the fact finder's determinations concerning the weight and credibility of the evidence and
will reverse the fact finder's determination only to arrest the occurrence of a manifest
injustice." Swearingen, 101 S.W.3d at 97. When reviewing the sufficiency of the evidence
after a jury trial, we consider all of the evidence presented, whether properly or improperly
admitted. Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). It is the sole
province of the jury to determine the credibility of witnesses and to weigh contradictory
testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Cain v. State, 958
S.W.2d 404, 408-09 (Tex. Crim. App. 1997).

Analysis


 In issues one and three, Bounds contends the evidence is legally insufficient. In issues
two and four, Bounds complains that the evidence is factually insufficient. We address all
of the issues together.

 A person commits the offense of aggravated sexual assault if the person intentionally
or knowingly causes the penetration by any means of the anus or sexual organ of a child
younger than fourteen years of age. Tex. Pen. Code Ann. § 22.021 (Vernon Supp. 2006). 
In this case, the jury convicted Bounds of penetrating the child's anus with his sexual organ
and penetrating the child's sexual organ with his fingers.

 During the State's direct examination of the child, the prosecutor frequently used
drawings of male and female figures for demonstrative purposes. The record is somewhat
unclear as to what parts of the body his questions and the child's answers referred; however,
we presume that the demonstrations support the jury's verdict. See Wawrykow v. State, 866
S.W.2d 87, 90 (Tex. App.--Beaumont 1993, pet. ref'd) (citing Rogers v. State, 756 S.W.2d
332, 336 (Tex. App.--Houston [14th Dist.] 1988, pet. ref'd) and Gaona v. State, 733 S.W.2d
611, 613 n.1 (Tex. App.--Corpus Christi 1987, pet. ref'd)) (When parties do not elicit for the
record details explaining the meaning of demonstrations, appellate court presumes the
demonstrations supported the jury's verdict.). (1) Both the prosecutor and defense counsel
repeatedly used the term "touched" and "touching" when questioning the child. As such, the
questions asked of the child were broadly and imprecisely worded. However, as discussed
below, other evidence in the record indicates that the touching involved penetration.

 The child testified that Bounds "touched" her sexual organ and anus. The child told
Trevino that Bounds touched her vagina with his hands. However, the child also testified
that Bounds used baby oil as a lubricant and raped her, and she also reported Bounds's use
of baby oil to Trevino. The child told Page that Bounds pushed her legs apart and "put his
private part in her." The child reported to Glaze that Bounds pulled her legs apart, "put his
private part into her," and "put his finger into her." Furthermore, the child told Trevino that
the encounter hurt and caused her to bleed.

 Viewing the record in the light most favorable to the verdict, a rational jury could
have concluded beyond a reasonable doubt that Bounds penetrated the child's anus with his
sexual organ and penetrated the child's sexual organ with his fingers. The evidence is legally
sufficient to support the verdict. We overrule issues one and three. Furthermore, a neutral
review of the entire record does not demonstrate that the proof of guilt is so obviously weak
as to undermine confidence in the jury's determination, nor does it demonstrate that the proof
of guilt is greatly outweighed by contrary proof. The evidence is factually sufficient to
support the verdict. We overrule issues two and four and affirm the trial court's judgment.

 AFFIRMED.








 

 STEVE MCKEITHEN

 Chief Justice


Submitted on October 19, 2006

Opinion Delivered November 29, 2006

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. When Wawrykow was decided, Tex. R. App. P. 50(d) explicitly placed the burden
of presenting a record showing reversible error on the party seeking review. See Word v.
State, 2006 WL 1639115, No. PD-0834-05 (Tex. Crim. App. June 14, 2006), at *4. 
However, the Court of Criminal Appeals has held that although the former version of Tex.
R. App. P. 50(d) was repealed, the appealing party still bears the burden to present a record
showing properly preserved, reversible error. Id.