Miguel Antonio REYES, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–00–00707–CR.

Court of Appeals of Texas,
Corpus Christi.

July 18, 2002.

**238**

Arnold R. Pena, Brownsville, for Appellant.

David W. Hartmann, Assistant County (Criminal District) Attorney, Yolanda De Leon, District Attorney, Brownsville, for Appellee.

BEFORE: Justices DORSEY, HINOJOSA, and RODRIGUEZ.

1. TEX.PEN.CODE ANN. § 29.02 (Vernon 1994).

## OPINION

Opinion by Justice HINOJOSA.

A jury found appellant, Miguel Antonio Reyes, guilty of two counts of robbery,[1] found he was a habitual offender,[2] and assessed his punishment at thirty years imprisonment and a $5,000.00 fine for each count. In two issues, appellant contends the evidence is legally and factually insufficient to support his conviction. We affirm.

### A. STANDARD OF REVIEW

When we review the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In conducting this analysis, we may not re-weigh the evidence and substitute our judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The standard is the same for both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex.Crim.App.1999); *Vela v. State*, 771 S.W.2d 659, 660 (Tex. App.—Corpus Christi 1989, pet. ref'd). We measure the legal sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). Such a charge would accurately set out the law, would be authorized by the indictment, and would not unnecessarily increase the State's burden of proof. *Id.*

2. TEX.PEN.CODE ANN. § 12.42 (Vernon Supp. 2002).

When we review the factual sufficiency of the evidence, we review all of the evidence and set aside the verdict only if (1) the evidence is so weak as to be clearly wrong and manifestly unjust or (2) the verdict is against the great weight of the evidence. *Johnson*, 23 S.W.3d at 11. We are not bound to view the evidence in the light most favorable to the prosecution, and may consider the testimony of all the witnesses. *Id.* at 10–12. Disagreeing with the fact finder's determination is appropriate only when the record clearly indicates that such a step is necessary to arrest the occurrence of a manifest injustice; otherwise, due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence. *Id.*

## B. ANALYSIS

In his first issue, appellant contends the evidence is legally insufficient to support his conviction because the State failed to prove, beyond a reasonable doubt, that he intentionally, knowingly, or recklessly caused bodily injury to Omar Sigala and Guillermo Vasquez. In his second issue, appellant contends the evidence is factually insufficient to support his conviction because the State failed to prove, beyond a reasonable doubt, that he intentionally, knowingly, or recklessly caused bodily injury to Omar Sigala and Guillermo Vasquez.

Section 29.02 of the Texas Penal Code provides, in relevant part:

**§ 29.02. Robbery**

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another. . . .

TEX.PEN.CODE ANN. § 29.02(a)(1) (Vernon 1994). The term "bodily injury" is defined as physical pain, illness, or any impairment of physical condition. TEX.PEN.CODE ANN. § 1.07(a)(8) (Vernon 1994). According to the court of criminal appeals:

This definition appears to be purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching. In fact, the degree of injury sustained by a victim and the "type of violence" utilized by an accused appear to be of no moment. . . . We have previously held the evidence sufficient to establish the element of bodily injury when a complainant testified she suffered physical pain when the defendant grabbed her briefcase and twisted her arm back, causing her to sustain a small bruise during the struggle. *Lewis v. State*, 530 S.W.2d 117, 118 (Tex.Crim. App.1975).

\* \* \* \* \*

We conclude that so long as the violence is clearly perpetrated against another "for the purpose of ... preventing or overcoming resistance to theft," it does not serve the legislative intent to engage in fine distinctions as to degree or character of the physical force exerted.

*Lane v. State*, 763 S.W.2d 785, 786–87 (Tex.Crim.App.1989).

The State presented the testimony of the victims, Omar Sigala and Guillermo Vasquez, and the arresting officer, Eduardo Reyes.

### 1. *Omar Sigala*

Omar Sigala testified that he was a loss prevention specialist at the Montgomery Ward store in Brownsville. On June 16, 2000, he was working the security cameras

when he saw appellant take a pair of binoculars and put them inside his waistband. Sigala radioed his manager, Guillermo Vasquez, that he had just seen appellant conceal an item in his waistband and that appellant was headed toward the men's department. Sigala later saw appellant take two shirts and put them inside his shirt. When appellant left the store without paying for the items, Sigala ran after him and yelled, "stop, security." Appellant turned around and began swinging his arms, trying to keep Sigala from detaining him. Sigala raised his arms to keep appellant from hitting him, but appellant kept swinging and hit Sigala's arms. Sigala grabbed appellant, but appellant continued swinging, hitting Sigala's chest and arms. Vasquez then approached appellant and grabbed appellant's shoulders. Appellant was jerking around, trying to escape, and the momentum forced all three down to the ground. Sigala testified that his knees and elbows were scraped and bleeding. He further testified:

> Prosecutor: Now the injuries you received, did you feel pain from them?
>
> Sigala: Well, not at the time. The adrenaline was up and we were kind of focusing on him.
>
> Prosecutor: When did you start to feel the pain?
>
> Sigala: After the officer took him, we felt them, but the next day is when we really felt the soreness and the bruises.
>
> Prosecutor: And how many bruises did you have, would you estimate?
>
> Sigala: About three from here, and the scrapes on my elbows and knees.

### 2. *Guillermo Vasquez*

Guillermo Vasquez testified that he was the Loss Prevention & Safety Manager at Montgomery Ward. On June 16, 2000, he received a call on his two-way radio from Sigala. Vasquez observed appellant in the men's department, next to a shirt display. Appellant made a movement as if he was concealing something. Vasquez then exited the store and waited, "in case the subject did not pay for the merchandise and he would exit the store or would try to run."

He later saw appellant leave the store, and Sigala was behind him. When Sigala attempted to detain him, appellant started swinging his arms. Sigala tried to block the punches. Vasquez moved toward appellant and grabbed him from his shoulders, to stop him from hitting Sigala. Appellant then made a jerking motion, causing all three to fall to the ground. In the process, Vasquez scraped his knuckles on the cement and they bled. Appellant hit, punched, and kicked Vasquez on the chest, biceps, and back of the neck. After the incident, Vasquez was in "a little bit of pain" and noticed several bruises. The next day, he noticed the bruises were darker. The bruises lasted a week, and they hurt.

### 3. *Officer Eduardo Reyes*

Brownsville Police Officer Eduardo Reyes testified that while on patrol, he received a call from his dispatcher that a theft had occurred at the Montgomery Ward store and there were two loss prevention officers apparently struggling with a subject. When he arrived at the store, the dispatcher told him that the subject had been detained and could be found in the loss prevention office. At the loss prevention office, he found that the loss prevention officers had sustained injuries to their arms. They had some scrapes on the elbows, and one of the victims had injured his hand. Officer Reyes called EMS because of the victims' injuries.

We hold the evidence is legally and factually sufficient to establish the element of bodily injury. Appellant's first and second issues are overruled.

The trial court's judgment is affirmed.