Opinion issued March 17, 2005










In The 
Court of Appeals
For The
First District of Texas




NOS. 01-03-01295-CR 
         01-03-01296-CR




JOSEPH TYRONE WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause Nos. 956410 & 947331




MEMORANDUM OPINION
          Appellant, Joseph Tyrone Williams, was charged in three separate indictments
with the felony offenses of aggravated assault, robbery, and the unlawful possession
of a controlled substance, namely Phencyclidine (“PCP”). Appellant pleaded not
guilty in all three cases. The cases were tried before a single jury, which found
appellant guilty of aggravated assault and robbery, but not guilty of possession of
PCP. The trial court assessed punishment at 20 years in prison for the aggravated
assault, and 40 years in prison for the robbery, with the sentences to run concurrently. 
          In his appeal of the aggravated assault conviction, appellant presents six points
of error. In his first and second points of error, appellant asserts that the trial court
erred by (1) denying his motion to quash the indictment because it does not set out
the manner and means by which he used a motor vehicle as a deadly weapon and (2)
failing to compel the State to elect one transaction on which to base a conviction for
aggravated assault upon a public servant. In his third, fourth, fifth, and sixth points
of error, appellant asserts that the evidence is legally and factually insufficient to
prove that he threatened the complainant with imminent bodily injury as alleged, and 
to prove that the motor vehicle he operated constituted a deadly weapon.
          In his appeal of the robbery conviction, appellant presents four points of error
in which he asserts that the evidence is legally and factually insufficient to prove that
he caused complainant bodily injury by pushing complainant with his hands, and to
prove that he was committing a theft when the complainant was injured. We affirm.
BACKGROUND
          Houston Police Department (“HPD”) officers N.R. Kuehn and W.J. Wehr
testified at trial that they saw appellant sitting in a stolen car in front of a restaurant
in the 9400 block of Homestead Road. When they approached the stolen car, Officer
Kuehn told appellant to get out of the car. Appellant did not comply and backed the
car into Kuehn’s patrol car, cutting the car’s steering wheel sharply to do so. 
Appellant then drove away at a high rate of speed. Both officers pursued appellant,
but lost him in traffic.
          Reginald Clark testified that he was sitting behind the wheel of his parked but
running 1988 Oldsmobile, which was on the side of the road in front of the house of
a friend he had been visiting. Clark stated that his 11-month-old son was buckled
into a child safety seat in the back seat of the car, and his wife was standing outside
the car talking with an elderly lady. Clark said he saw appellant running toward him
and then jump into the passenger side of the car. Clark testified that appellant offered 
Clark $200 for a ride, but Clark refused. Clark told appellant, whom he did not know,
that he couldn’t give him a ride because “my baby is in the car.” Clark said his wife
began ordering appellant out of the car and, when she told appellant that a police car
was coming, appellant asked Clark to act like he knew him. Clark stated that he
stepped partially out of the car to alert the approaching HPD patrol car by making
motions toward appellant. Appellant then pushed him all the way out of the car and
drove off. Clark testified that he reached back inside the car and grabbed the steering
wheel but was thrown off by the acceleration of the car. Clark said his left leg was
injured when he was thrown from the speeding car.
          When Officer B. L. Diettrich saw appellant sitting in the car and Clark’s
gestures, he approached the car and ordered appellant to get out, but appellant pushed
Clark from the car and sped off. Diettrich said he heard Clark’s wife screaming that
her baby was in the car and he returned to his patrol car to pursue appellant. The
ensuing chase involved as many as ten patrol cars and ten HPD officers. During the
chase, appellant attempted to ram Clark’s car into Diettrich’s patrol car multiple
times, causing at least three collisions between the two vehicles. Diettrich said that
the first time appellant rammed his patrol car was when he had gotten out in front of
appellant, who “started to slow down, but then he sped up and rammed the back of
my patrol car.” As a result of this collision, Diettrich said he hurt his knee when it
was slammed into the dashboard. Diettrich testified that appellant then backed up and
that “his car hit me again,” although he didn’t think the second collision was
intentional because appellant’s car was “pushed” by Officer S. F. Casko’s patrol car. 
Diettrich said that he continued to pursue the appellant, who ran red lights, sped the
wrong way down busy streets, rammed into the back of a pickup truck, and hit some
railroad ties under a bridge and slammed into the bridge wall. Shortly after his car
hit the bridge wall, appellant rammed his car into Diettrich’s patrol car again, running
it into a ditch. Both Diettrich and Casko testified that, at this point, appellant pulled
his car over because it was no longer driveable. Appellant still refused to get out of
the car and had to be pulled out by officers. The officers found Clark’s 11-month-old
son, covered with shattered glass but appearing otherwise unharmed, still strapped
into the child safety seat.
          Casko testified that he had joined the pursuit, had witnessed appellant’s
attempts to ram Diettrich’s patrol car, and had witnessed the actual collisions. Casko
said that, after appellant’s car quit working and he had placed appellant under arrest,
he found two brown bottles in the front seat of the car appellant had stolen from
Clark. Casko testified that he believed that one bottle contained PCP and that the
other contained marijuana.           DISCUSSION
Motion to quash indictment for aggravated assault
          In his first point of error, appellant asserts that the trial court erred in denying
his motion to quash the indictment in the aggravated assault case because the
indictment “fails to set out the manner and means by which the appellant used or
exhibited a motor vehicle as a deadly weapon.” We review a trial court’s ruling on
a motion to quash an indictment under an abuse of discretion standard. State v.
Goldsberry, 14 S.W.3d 770, 772 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d)
(citing Thomas v. State, 621 S.W.2d 158, 163 (Tex. Crim. App. 1981) (op. on reh’g)). 
Subject to rare exceptions, an indictment tracking the language of the statute will
satisfy constitutional and statutory requirements, and the State need not allege facts
that are merely evidentiary in nature. Murphy v. State, 95 S.W.3d 317, 321 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d) (citing State v. Mays, 967 S.W.2d 404,
406 (Tex. Crim. App. 1998)). An indictment must convey sufficient notice to allow
the accused to prepare his defense. Id. Upon review, we first determine if the notice
given is sufficient and, if it is, our inquiry is ended. Crum v. State, 946 S.W.2d 349,
359 (Tex. App.—Houston [14th Dist.] 1997, pet. ref’d). 
          Here, the indictment alleges that appellant did, “while in the course of
committing theft of property owned by Reginald Clark and with intent to obtain and
maintain control of the property, intentionally, knowingly and recklessly cause bodily
injury to Reginald Clark, by pushing the Complainant from a motor vehicle with his
hands.” Appellant admits that the indictment tracks the language of the applicable
penal code and states an offense. He asserts, however, that driving a motor vehicle
is “otherwise innocent conduct” requiring the State to give “notice of the precise acts”
that constituted the use of the motor vehicle as a deadly weapon, and suggests that his
use of the car might not be a criminal offense at all, or might constitute the alternative
offenses of “reckless conduct, a terroristic threat, or disorderly conduct.”  
          A motion to quash should be granted only when the language concerning the
defendant’s conduct is so vague or indefinite as to deny the defendant effective notice
of the acts he allegedly committed. DeVaughn v. State, 749 S.W.2d 62, 67 (Tex.
Crim. App. 1988). The indictment in appellant’s aggravated assault case gives him
sufficient notice of the acts he allegedly committed. See St. Clair v. State, 26 S.W.3d
89, 95-96 (Tex. App.—Waco 2000, pet. ref’d) (affirming denial of motion to quash
both assault indictment and deadly weapon allegation despite failure to specify means
and manner motor vehicle was used as deadly weapon to threaten police officer);
Hare v. State, 713 S.W.2d 396, 398 (Tex. App.—El Paso 1986, pet. ref’d) (rejecting
appellant’s assertion that indictment must allege “manner and means” where
indictment charged that motor vehicle was deadly weapon whose use was “intentional
or knowing assault by threat”). The “precise acts” appellant seeks were evidentiary
in nature and did not need to be alleged in the indictment for notice purposes. See
Murphy, 95 S.W.3d at 321. We hold that the language of the indictment was not so
vague or indefinite as to deny appellant effective notice of the acts he allegedly
committed. We overrule appellant’s first point of error.  
Failure to compel election in aggravated assault case
          In his second point of error, appellant asserts that the State should have been
required to elect only one instance of appellant’s attempts to ram Clark’s car into
Diettrich’s patrol car. Appellant correctly states the general rule that, when an
indictment alleges a single offense and the proof at trial shows the alleged offense
occurred more than one time, the defendant is entitled to have the State elect the
single transaction it will rely upon for conviction. O’Neal v. State, 746 S.W.2d 769,
771 (Tex. Crim. App. 1988). However, appellant’s assertion that each time he
attempted to crash into Diettrich’s patrol car was a distinct and separate transaction
is without merit. His flight from the police, and the incidents of his attempts to ram,
and actually crashing into, Diettrich’s patrol car, were part of one continuous criminal
transaction. Compare Crawford v. State, 696 S.W.2d 903, 906 (Tex. Crim. App.
1985) (holding that election was necessary because alleged multiple rapes over 12-day period were not “one continuous” course of conduct or transaction) with Steele
v. State, 523 S.W.2d 685, 687 (Tex. Crim. App. 1975) (holding that no election was
required when two alleged acts were “part and parcel” of same criminal transaction,
despite separation by time and distance, because of defendants “continuing and
intervening” actions) and Bethune v. State, 363 S.W.2d 462, 464 (Tex. Crim. App.
1962) (holding that repeated rape of victim was one criminal transaction that required
no election because acts occurred in same bed on same night). We overrule
appellant’s second point of error.
 
Factual and legal sufficiency
          In his remaining points of error, appellant challenges the legal and factual
sufficiency of the evidence to support the two convictions. In reviewing the evidence
on legal sufficiency grounds, we view the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000). In a factual sufficiency review, we view all the evidence in
a neutral light, and we will set the verdict aside only if the evidence is so weak that
the verdict is clearly wrong and manifestly unjust or the contrary evidence is so
strong that the standard of proof beyond a reasonable doubt could not have been met. 
Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004), pet. for cert. filed,
__ U.S.L.W. ___ (U.S. Dec. 20, 2004 (No. 04-7807) (citing Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004)). We should not substitute our own
judgment for that of the fact finder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim.
App. 1996). 
          A.      Sufficiency of the evidence to prove aggravated assault 
                    1.       Threat of imminent bodily injury
          In his third and fourth points of error concerning his conviction for aggravated
assault, appellant alleges that there is no proof that he threatened Diettrich with
imminent bodily injury. He asserts the following: 
The record fails to show that the complainant [Diettrich] was threatened
with imminent bodily injury by the appellant’s actions [and] . . . fails to
show that the complainant was ever injured. The record likewise fails
to show that the vehicle collisions were of such a nature that the
complainant was placed in the threat of imminent bodily injury. 
 
Our review of the record shows it to be replete with uncontested evidence contrary
to appellant’s assertions. Diettrich and Casko testified that appellant was driving at
a high rate of speed and accelerated toward Diettrich’s patrol car before striking it the
first time. Diettrich testified that his knee was injured in that collision. In the final
collision, appellant swerved his car into Diettrich’s patrol car running it into a ditch.
          Viewing the evidence in the light most favorable to the prosecution, we hold
that a rational trier of fact could have found, beyond a reasonable doubt, that
appellant threatened Diettrich with imminent bodily injury. Viewing all the evidence
in a neutral light, we hold that the evidence that appellant threatened Diettrich with
imminent bodily injury is not so weak that the verdict is clearly wrong and manifestly
unjust, nor is the contrary evidence so strong that the standard of proof beyond a
reasonable doubt could not have been met.    We overrule appellant’s third and fourth
points of error. 
                     2.       Use of motor vehicle as a deadly weapon
          In his fifth and sixth points of error, appellant alleges that the evidence is
legally and factually insufficient to prove that the motor vehicle “operated by the
appellant constituted a deadly weapon, as defined by law.” Appellant correctly notes
that a motor vehicle is not a deadly weapon per se, but may “be a deadly weapon if
it is driven so as to endanger lives.” Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim.
App. 2003) (holding that evidence vehicle was driven in manner raising “merely a
hypothetical potential for danger” was insufficient to support deadly weapon finding
because no other persons were present on road). Appellant asserts that his case is
akin to the facts in Cates because “the record fails to show that the complainant or
any other person were [sic] in actual, as opposed to theoretical[,] danger.” Again, we
disagree with appellant’s reading of the facts. In this case, unlike the situation in
Cates, the evidence is uncontroverted that appellant twice crashed his car into
Diettrich’s patrol car, and a rational jury could have found that the danger to
Diettrich’s life was actual, not theoretical.
          Viewing the evidence in the light most favorable to the prosecution, we hold
that a rational trier of fact could have found, beyond a reasonable doubt, that
appellant used and exhibited the car as a deadly weapon. Viewing all the evidence
in a neutral light, we hold that the evidence that appellant used and exhibited the car
as a deadly weapon is not so weak that the verdict is clearly wrong and manifestly
unjust, nor is the contrary evidence so strong that the standard of proof beyond a
reasonable doubt could not have been met. We overrule appellant’s fifth and sixth
points of error. 
          B.      Sufficiency of the evidence to prove robbery
          A person commits theft if he unlawfully appropriates property with the intent
to deprive the owner of the property. Tex. Pen. Code Ann. § 31.03(a) (Vernon Supp.
2004-2005). A person commits robbery if, in the course of committing a theft, and
with intent to obtain or maintain control of the property, he causes bodily injury to
another. Id. § 29.02(a)(1) (Vernon 2003). 
          In his first and second points of error regarding his conviction for robbery,
appellant asserts that the evidence was legally and factually insufficient to prove that
Reginald Clark, the complainant, was injured “in the manner alleged” when appellant
stole his car. Specifically, appellant contends that the State failed to prove that
appellant “used his hands” when he “pushed” Clark from the car and also failed to
prove that the push was the cause of Clark’s injuries. The indictment alleges that
appellant did, in the course of committing a theft, “intentionally, knowingly and
recklessly cause bodily injury to Reginald Clark, by pushing the Complainant from
a motor vehicle with his hands.” (Emphasis added). Appellant’s complaints center on
the emphasized words. 
                    1.       Pushing “with his hands”
          We note that it was unnecessary for the State to allege in the indictment how
appellant caused Clark’s injury because it is an evidentiary matter and not an essential
element of the offense of robbery. See Tex. Pen. Code Ann. § 29.02(a)(1); Curry
v. State, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000) (noting that matters “not
necessary to be proved” are sometimes unnecessarily alleged in indictments). As a
general rule such “surplusage” may be entirely disregarded. Curry, 30 S.W.3d at 399;
Burrell v. State, 526 S.W.2d 799, 802 (Tex. Crim. App. 1975). However, under the
“Burrell exception” this general rule does not apply “when the unnecessary matter is
descriptive of that which is legally essential to charge a crime” and the State must
prove the “surplus allegation.” Curry, 30 S.W.3d at 399; Burrell, 526 S.W.2d at 802. 
An unnecessary matter is “descriptive” of an element of the offense if it “define[s] the
offense more narrowly, place[s] it in a specific setting, or describe[s] the method by
which it was committed.” Curry, 30 S.W.3d at 399 (quoting Upchurch v. State, 703
S.W.2d 638, 641 (Tex. Crim. App. 1985)) (alterations in original). When the
unnecessary allegation is descriptive and explanatory of the offense charged, the State
must prove the allegation even though it was needlessly pleaded. Burrell, 526
S.W.2d at 802.
          In this case, the indictment’s allegation that appellant caused Clark’s injury by
“pushing” Clark “with his hands” is descriptive of an essential element of robbery,
bodily injury. See Curry, 30 S.W.3d at 403 (holding that phrase “by using and
threatening to use deadly force namely, a firearm” was descriptive of an essential
element of abduction in aggravated kidnaping and must, therefore, be proven). See
also Rogers v. State, 756 S.W.2d 332, 335-36 (Tex. App.—Houston [14th Dist.]
1988, pet. ref’d) (holding that State was required to prove unnecessary allegation that
appellant placed his “hands in his pocket” as if he had gun). Additionally, the
allegation that appellant caused Clark’s injury by pushing him with his hands is more
than descriptive of an element; it was a manner or means of committing an element
of robbery. See Curry, 30 S.W.3d. at 403 (declining to consider overruling exception
to surplusage rule because unnecessary descriptive phase was also manner or means
of committing essential element of abduction). We conclude that the unnecessary
allegation must be proved, and we must, therefore, test the evidence to see if it was
sufficient to prove that appellant “pushed” Clark with his hands. 
          The sufficiency of the evidence is measured against a hypothetically correct
jury charge. Id. at 404 (citing Malik v. State, 953 S.W.2d 234 (Tex. Crim. App.
1997)). A hypothetically correct jury charge is one that “accurately sets out the law,
is authorized by the indictment, does not unnecessarily increase the State’s burden of
proof or unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant is tried.” Id. In this case the
jury charge given corresponded with the Malik “hypothetically correct jury charge”
and included the phrase “pushed . . . with his hands.” See id. at 404-05 (analyzing
indictment’s unnecessary allegation under Malik and holding that it must be repeated
in charge). 
          Although no evidence contained in the record contests the fact that appellant
“pushed” Clark from the car, Clark did not expressly testify that appellant pushed him
with his hands. While the State argues that the conclusion that appellant used his
hands to push Clark “is nearly inescapable,” we need only be persuaded that the jury
could have drawn a reasonably inference from the evidence that appellant used his
hands to push Clark. See Moon v. State, 44 S.W.3d 589 (Tex. App.—Fort Worth
2001, pet. ref’d) (holding evidence legally sufficient to prove defendant used his
hands to injure his wife, as alleged in indictment, despite lack of direct testimony
because jury could infer use of hands to beat, grab, and throw her); Wawrykow v.
State, 866 S.W.2d 87, 88-89 (Tex. App.—Beaumont 1993, pet. ref’d) (holding that
rational jury could find essential elements of crime because “juries are free to use
their common sense and apply common knowledge, observation, and experience
gained in ordinary affairs of life when giving effect to the inferences that may
reasonably be drawn from the evidence.”). Clark’s testimony shows that he was
partially occupying the driver’s side of the car when appellant “jumped over” from
the passenger side and pushed him out, then got behind the wheel and drove off. 
          Viewing the evidence in the light most favorable to the prosecution, we hold
that a rational trier of fact could have found, beyond a reasonable doubt, that
appellant pushed Clark with his hands. Viewing all the evidence in a neutral light,
we hold that the evidence that appellant pushed Clark with his hands is not so weak
that the verdict is clearly wrong and manifestly unjust, nor is the contrary evidence
so strong that the standard of proof beyond a reasonable doubt could not have been
met. 
                    2.       Causing bodily injury
          Appellant also argues that the evidence did not establish that Clark suffered a
“bodily injury” as a result of the push because Clark testified only to injuries he
suffered as a result of letting go of the car’s steering wheel as appellant speed away. 
          Bodily injury is defined as physical pain, illness, or any impairment of physical
condition. Tex. Pen. Code Ann. § 1.07(a)(8) (Vernon 2003). This definition
appears to be purposely broad and seems to encompass even relatively minor physical
contacts so long as they constitute more than mere offensive touching. Lane v. State,
763 S.W.2d 785, 786-87 (Tex. Crim. App. 1989); Lewis v. State, 530 S.W.2d 117,
118 (Tex. Crim. App. 1975); Reyes v. State, 83 S.W.3d 237, 239 (Tex. App.—Corpus
Christi 2002, no pet.); Arnold v. State, 36 S.W.3d 542, 546 (Tex. App.—Tyler, 2000,
pet. ref’d). Moreover, a jury may infer that a victim suffered pain from, for example,
the existence of a cut, bruise, or scrape on the victim’s body. Arzaga v. State, 86
S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.). See also Bolton v. State, 619
S.W.2d 166, 167 (Tex. Crim. App. 1981) (holding evidence of small cut on arm
sufficient to show bodily injury); Goodin v. State, 750 S.W.2d 857, 859 (Tex.
App.—Corpus Christi 1988, pet. ref’d) (holding evidence of bruises and muscle strain
sufficient to show bodily injury by inference, and rejecting contention that any direct
or express evidence that victim suffered pain was necessary). 
          Even without direct evidence of pain, or a bruise or other observable physical
manifestation of an injury, a jury may still infer pain from circumstantial evidence. 
In Wawrykow v. State, a case decided by the Beaumont Court of Appeals, the
defendant was indicted for misdemeanor assault for causing bodily injury to a police
officer by pushing “on or about his chest with his hands.” 866 S.W.2d 87, 88 (Tex.
App.—Beaumont 1993, pet. ref’d). The evidence did not show that the officer was 
bruised or had any observable injury, and the Beaumont court stated that it agreed
“with appellant that direct evidence of ‘pain’ . . . or . . . ‘hurt’ by appellant’s push to
his chest is lacking.” Id. at 88. Nevertheless, the court held that the evidence was
legally sufficient to satisfy the bodily injury element of assault because the force of
the push, which was demonstrated for the jury but not ascertainable from the record,
could have been sufficient for the jury to infer that it caused the officer pain. Id. at
90. Thus, a lack of observable physical injury does not bar an inference that the
physical contact caused pain. Arzanga, 86 S.W.3d at 778-79; see also, e.g., Zuliani
v. State, 52 S.W.3d 825, 831 (Tex. App.—Austin 2001), rev’d on other grounds, 97
S.W.3d 589 (Tex. Crim. App. 2003) (stating that no rational jury could believe that
wife slapped, hit, or pushed husband down, without also believing acts caused him
physical pain beyond low threshold needed for bodily injury element of self-defense);
Gordon v. State, 681 S.W.2d 629, 631 (Tex. App.—Houston [14 Dist.] 1984), rev’d
in part on other grounds, 707 S.W.2d 626 (Tex. Crim. App. 1986) (holding bodily
injury element in civil rights case was satisfied by evidence deputy sheriff grabbed
suspect’s hair and jerked his head back during questioning because deputy pulled
“hard enough” to have caused physical pain).
          In this case the evidence indicates that appellant pushed Clark with sufficient
force to expel him from the car and cause him to stumble back from the car. When
violence is used against victims to overcome their resistance to theft, we do not
engage in fine distinctions as to the degree or character of the physical force exerted. 
Lane, 763 S.W.2d at 786 (“In fact, the degree of injury sustained by a victim and the
‘type of violence’ utilized by an accused appear to be of no moment.”). 
          Viewing the evidence in the light most favorable to the prosecution, we hold
that a rational trier of fact could have found, beyond a reasonable doubt, that
appellant did cause bodily injury to Clark by pushing him. Viewing all the evidence
in a neutral light, we hold that the evidence that appellant did cause bodily injury to
Clark by pushing him is not so weak that the verdict is clearly wrong and manifestly
unjust, nor is the contrary evidence so strong that the standard of proof beyond a
reasonable doubt could not have been met. We overrule appellant’s first and second
points of error.
                    3.       In the course of committing a theft
          In his third and fourth points of error regarding his conviction for robbery,
appellant asserts that the evidence was legally and factually insufficient to prove that
he “was in the course of committing theft at the time” Clark was injured. 
Specifically, appellant contends that the State did not prove that he intended to
deprive Clark of his car “permanently or for so extended a period of time that a major
portion of the value or enjoyment of the property is lost to the owner.”


 Appellant
asserts that, because his “apparent” motive was to evade arrest, he intended only a
temporary deprivation. 
           The record contains no evidence to support appellant’s implied assertion that
he only intended to temporarily deprive Clark of his car. Cf. Flores v. State, 888
S.W.2d 187, 190-91 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (noting that
“intent to deprive” element of auto theft is not proved when all evidence presented
indicates it was taken for temporary use). Juries may infer intent from the defendant’s
conduct and surrounding circumstances. LaPoint v. State, 750 S.W.2d 180, 182 (Tex.
Crim. App. 1986); Washington v. State, 127 S.W.3d 111, 117, (Tex. App.—Houston
[1st Dist.] 2003, no pet.). Based on appellant’s actions and conduct at the time,
including his use of physical force, the jury would have had ample evidence from
which to infer that appellant intended to permanently deprive Clark of his car. See
Flores, 888 S.W.2d at191; Baum v. State, 848 S.W.2d 808, 809 (Tex. App.—Houston
[14th Dist.] 1993, no pet.); see also Rowland v. State, 744 S.W.2d 610, 613 (Tex.
Crim. App. 1988) (noting intent to permanently deprive can be inferred from manner
in which property is taken); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981)
(holding evidence sufficient to prove intent to permanently deprive, where defendant
stole taxicab at gunpoint, despite fact that defendant only drove a few miles).
          Viewing the evidence in the light most favorable to the prosecution, we hold
that a rational trier of fact could have found, beyond a reasonable doubt, that
appellant was in the course of committing a theft when he caused Clark bodily injury. 
Viewing all the evidence in a neutral light, we hold that the evidence that appellant
was in the course of committing a theft when he caused Clark bodily injury is not so
weak that the verdict is clearly wrong and manifestly unjust, nor is the contrary
evidence so strong that the standard of proof beyond a reasonable doubt could not
have been met. We overrule appellant’s third and fourth points of error regarding his
conviction for robbery. 
                                                     CONCLUSION
          We affirm the judgments of the trial court as to both the aggravated assault
conviction and the robbery conviction. 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).