6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00122-CV
______________________________



IN RE:
ERIC CARSON WYNN





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Original Mandamus Proceeding





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Relator, Eric Carson Wynn, has filed his petition for writ of mandamus.


 He seems to ask
this Court to direct the trial court, first, to set for trial a petition for termination of parental rights in
which he is named as the putative father and then, to appoint counsel to represent him in that trial.
Â Â Â Â Â Â Â Â Â Â Â Â The relator bears a heavy burden of showing entitlement to the relief requested. See Johnson
v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). Rule 52.3 of the
Texas Rules of Civil Procedure sets out the necessary contents of a petition for writ of mandamus
and requires, among other things, that the petitioner provide the Court with "document[s] showing
the matter complained of." Tex. R. App. P. 52.3(j)(1)(A). Wynn has failed to provide us with any
documentation sufficient to show himself entitled to mandamus relief. For instance, the petition fails
to demonstrate that Wynn has requested such relief from the trial court.
Â Â Â Â Â Â Â Â Â Â Â Â We expressly do not reach the merits of Wynn's petition. More information presented in a
manner consistent with Rule 52.3 is necessary to permit the Court to review Wynn's assertions and 
Â 
Â 
Â 
consider awarding mandamus relief. Based on noncompliance with Rule 52.3, we deny Wynn's
petition for writ of mandamus. See Tex. R. App. P. 52.3, 52.8(a).
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â October 17, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â October 18, 2005



d to assault the officers. 

 On cross-examination, Childress asserted that Morales was innocent and denied that he
charged into Robertson. She did not hear the officers order Morales to calm down or put his hands
behind his back. She admitted that Morales provided financial support for her and their baby and
conceded that, if Morales were convicted, it would cause her great financial harm. 

 Next, Morales' father, Peter Mark Morales (Peter), testified that he was at the convenience
store putting gas in his truck when he saw Morales approach Robertson. Peter saw Morales ask
Robertson something, and Robertson started pushing Morales, shoved his head against the patrol car,
quickly put him in a choke hold and pulled him to the ground. Before the officers restrained
Morales, Peter did not see Morales take any violent action toward the officers. He thought Morales
struggled with the officers as a reaction to the choke hold. Peter said Morales offered no resistance
of any kind until Robertson took Morales to the ground. 

 Morales took the stand in his own defense and testified that he followed the officer's
instructions and denied doing anything to injure Robertson. When asking Robertson about his
sister's arrest, Morales described his own demeanor as docile and respectful. Morales asserts that
Robertson put him in a choke hold and pulled him to the ground. After he and Robertson went to
the ground, Morales testified that, in order to avoid injury, he went into defensive mode, a fetal
position, bent over on his knees with his hands clasped together under him. Morales admitted that,
in trying to relieve the pressure on his neck and stop Robertson's choke hold, he may have grabbed
Robertson's hands, tried to remove them from around his neck, or reached around Robertson's body
and tried to push him off. He denied making any aggressive moves toward Robertson. 

 Here, Morales contends there was no evidence that he knowingly, intentionally, or recklessly
caused bodily injury to Robertson because the officer wrestled Morales to the ground and ordered
the use of pepper spray. Because the pain from both events was the direct result of Robertson's
actions or orders, Morales argues, any pain from the pepper spray or scraped knees was caused by
Robertson rather than Morales. We disagree.

 A person is criminally responsible if the result would not have occurred but for his
conduct, operating either alone or concurrently with another cause, unless the
concurrent cause was clearly sufficient to produce the result and the conduct of the
actor clearly insufficient.

Tex. Penal Code Ann. § 6.04(a) (Vernon 2003).

 "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." 
Tex. Penal Code Ann. Â§ 1.07(a)(8) (Vernon Supp. 2008). This "purposefully broad" definition of
"bodily injury" includes physical pain from "even relatively minor physical contacts so long as they
constitute more than mere offensive touching." Wawrykow v. State, 866 S.W.2d 87, 89 (Tex.
App.--Beaumont 1993, pet. ref'd) (citing Lane v. State, 763 S.W.2d 785, 786 (Tex. Crim. App.
1989)). The intent element, "reckless," is defined in Section 6.03(c) of the Texas Penal Code:

 A person acts recklessly, or is reckless, with respect to circumstances surrounding his
conduct or the result of his conduct when he is aware of but consciously disregards
a substantial and unjustifiable risk that the circumstances exist or the result will
occur. The risk must be of such a nature and degree that its disregard constitutes a
gross deviation from the standard of care that an ordinary person would exercise
under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code Ann. Â§ 6.03(c) (Vernon 2003). Jurors may also infer intent from the defendant's
acts, words, and conduct. Guevara v. State, 152 S.W.3d 45, 49 & 50 (Tex. Crim. App. 2004); see
also Beltran v. State, 593 S.W.2d 688, 689 (Tex. Crim. App. [Panel Op.] 1980); Moyer v. State, 948
S.W.2d 525, 530 (Tex. App.--Fort Worth 1997, pet. ref'd).

 Morales focuses on Robertson's action in taking the pair to the ground and in ordering the
use of pepper spray, suggesting that there is no proof of any affirmative action by Morales that
caused any pain or injury to Robertson.

 The broad statutory definition of assault does not explicitly require an exertion of force in
the direction of the victim, but, by its terms, allows a conviction for even recklessly "causing" pain
to another, without specifying any type of action required. Given this broad definition of assault,
unless there is, within the meaning of the statute, some implicit added requirement--such as an
action taken in the direction of an arresting officer--there appears the real possibility that, in some
cases, it would be impossible to distinguish between resisting arrest and assaulting an officer who
is attempting an arrest. Pulling away from an officer's grasp, or passively refusing to cooperate in
an arrest, if pain results to the arresting officer, theoretically could support an assault conviction. 
On the other hand, we have found no published Texas case that has approved an assault conviction
in the absence of some proof that the defendant struck the victim or used some force in the direction
of the victim.

 The Texas Court of Criminal Appeals has held that a defendant charged with assaulting an
arresting officer was not entitled to a lesser-included offense instruction on resisting arrest when he
or she struck the arresting officer, even though his or her motive was to avoid being arrested. See
Lofton v. State, 45 S.W.3d 649 (Tex. Crim. App. 2001). At least one court has expressed concern
over that holding:

 [W]e find the Lofton decision troubling: the Lofton holding creates the very great
risk that, in any case in which a person resists arrest by any use of force, the State
will oppose a resisting arrest instruction. Although the appellants in the instant case
and in Lofton clearly used a great deal of force in resisting arrest, the decision of the
court of criminal appeals raises the very real possibility that any minor scuffle during
an arrest will result in a defendant being charged solely with assault on a public
servant.

Oiler v. State, 77 S.W.3d 849, 853-54 (Tex. App.--Corpus Christi 2002, pet. ref'd).

 A few years ago, we upheld an assault conviction where a defendant's flailing struggles to
avoid arrest resulted in the defendant hitting and kicking an officer. Gumpert v. State, 48 S.W.3d
450, 454-55 (Tex. App.--Texarkana 2001, pet. ref'd). Evidence that defendant struck the victim in
the chest causing pain and scuffled with the victim resulting in injured fingers, has been held
sufficient to support an assault conviction. Bryant v. State, 47 S.W.3d 80, 82-83 (Tex. App.--Waco
2001, pet. ref'd); see Lofton, 45 S.W.3d at 652 (even if defendant intended only to prevent his arrest,
force used in striking officer in face was at least reckless in causing bodily injury); Brooks v. State,
967 S.W.2d 946, 947-48 (Tex. App.--Austin 1998, no pet.) (evidence sufficient where defendant
accidently struck an officer in eye while "merely trying to free herself" from officer's grasp).

 In each of the preceding cases, the public servant testified to a blow of some sort from the
defendant or a forcible struggle with the defendant (not a simple pulling away), causing pain to the
public servant. Morales argues that there is no proof that any action of his caused Robertson's pain. 
Here, we need not decide whether assault requires proof of some force used on or in the direction
of the victim.

 While there is no testimony of an actual hit or kick that connected with any part of
Robertson's body, there is testimony by Robertson of a physical movement by Morales toward
Robertson that connected with at least some portion of Robertson's midsection and, immediately
following that contact, an ensuing struggle, during which Robertson was "injured." Also, there was
later testimony that Morales, after aggressively approaching Robertson, "attacked" or "charged into"
Robertson. Those items of evidence are sufficient, without more, to show that Morales exerted force
against or toward Robertson and that force is connected causally to Robertson's "injuries."

 Also during Robertson's testimony, Robertson and a fellow officer gave the jury a physical
demonstration of the encounter, thus putting before the jury certain evidence that we cannot see or
explicitly read in the record. Physical demonstrations or gestures have been cited as added reasons
appellate courts must defer to jury findings.

 Central to one case was the fact question of where the defendant put his hand during the
charged robbery. See Rogers v. State, 756 S.W.2d 332, 336-37 (Tex. App.--Houston [14th Dist.]
1988, pet. ref'd). The location of Rogers' hand was hinted at in the language used in testimony, but
was apparently specified by the gestures of a witness and of both attorneys in questioning that
witness. Notwithstanding the lack of explicit testimonial language specifying where Rogers' hand
was located, the court in Rogers deferred to the jury verdict in light of the demonstrations or gestures
made at trial:

 In addition to noting that appellant failed to request that the record reflect the
substance of the gestures or demonstrations, we also note that he failed to object to
them. Because this court must evaluate challenges to the sufficiency of the evidence
by reviewing the record in the light most favorable to the verdict, we hold the
testimony excerpted above, which indicates that not one but several demonstrations
took place, supports the jury's verdict. See Tex. R. App. P. 50(d).

Id. at 337. Similarly, an earlier involuntary manslaughter case turned on how the defendant held a
gun; in deference to the jury's findings, the appellate court found the evidence sufficient to support
the conviction, because the jury had seen the physical gestures obviously accompanying
indeterminate expressions "like that" or "like this" used in the testimony. Gaona v. State, 733
S.W.2d 611, 613 & n.1 (Tex. App.--Corpus Christi 1987, pet. ref'd). We, too, are constrained to
defer to the jury's findings, based on its observation of the gestures and demonstrations at trial,
gestures and demonstrations which were not transcribed and which we cannot see.

 Even without such a physical demonstration for the jury, we use "deferential standards of
review" in reviewing jury findings for evidentiary sufficiency. Roberts v. State, 221 S.W.3d 659,
664 n.7 (Tex. Crim. App. 2007); Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). The
jury is in the better position to evaluate the witnesses. Marshall, 210 S.W.3d at 625. That is
especially true when there were physical demonstrations or gestures given in the jury's presence, but
that are not explicitly transcribed or detailed in the record. See Rogers, 756 S.W.2d at 336-37;
Gaona, 733 S.W.2d at 613 & n.1.

 There is testimonial evidence that Morales moved or charged into Robertson's body, making
contact with him and that pain to Robertson (skinned knees and pepper spray) flowed directly from
that contact. There was also the physical demonstration to the jury. The evidence, thus, allows for
a finding that actions by Morales, in which he directed force toward Robertson, resulted directly in
Robertson's "take-down" of Morales, the struggle on the ground, the skinned knees, and the pepper
spray. Skinned knees and the results of the pepper spray constitute "bodily injury." (3) As the record
does not conflict with the jury findings, we find the evidence that Morales knowingly, intentionally,
or recklessly caused bodily injury to Robertson legally and factually sufficient.

(2) The Trial Court Did Not Abuse Its Discretion by Admitting Evidence of Morales' Prior
Violent Offenses

 Morales argues that the trial court erred in allowing questions about the prior arrests because
the danger of unfair prejudice substantially outweighed the evidence's probative value. (4) We disagree.

 On direct examination, the following exchange took place between Morales' counsel and
Childress, a defense witness:

 Q Did Mr. Morales threaten the officer in any way?


 A No.

 

 Q Did [Morales] use any abusive language towards the officer?


 A No, he didn't. He's not that type of person.

 

 Q Did he make any threatening gestures toward the officer?


 A No.


(Emphasis added.) Outside the jury's presence, the State argued that by saying, "[h]e's not that type
of person," Childress characterized Morales "as a peaceful person" and that her testimony opened
the door to questions about "any violent offense." The State sought to rebut Childress' testimony and
thereby "correct a false impression that's been put before the jury" by asking Childress if she knew
about Morales' prior arrests for violent crimes, which stem from 1993 through 2005. Morales
objected, asserting that the probative value of the extraneous-offense evidence was substantially
outweighed by the danger of unfair prejudice. The trial court overruled Morales' objection (5) and
allowed the State to ask Childress if she knew about Morales being arrested for:

 Robbery in 1993;

 Battery of a police officer and resisting arrest in 1994;

 Obstructing a police officer in 1994;

 Obstructing a police officer and domestic violence battery in 1998;

 First-degree kidnapping in 2002;

 Domestic violence in 2003; 

 Battery domestic violence in 2005; and

 Another battery domestic violence in 2005.

Standard of Review

 We review a trial court's admission or exclusion of extraneous-offense evidence for abuse
of discretion. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Moreover, a trial
court's decision regarding admissibility of evidence will be sustained if correct on any theory of law
applicable to the case, even when the court's underlying reason for the decision is wrong. Romero
v. State, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990). 

 If a trial court determines that evidence of extraneous crimes or bad acts have relevance aside
from character conformity, and a timely, proper Rule 403 objection is made, the trial court must
make a balancing determination under Rule 403. Montgomery v. State, 810 S.W.2d 372, 388-89
(Tex. Crim. App. 1990) (op. on reh'g). Rule 403 provides that, "[a]lthough relevant, evidence may
be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence." Tex. R. Evid. 403. Only "unfair" prejudice provides the basis
for exclusion of relevant evidence. Montgomery, 810 S.W.2d at 389. Unfair prejudice arises from
evidence that has an undue tendency to suggest that a decision be made on an improper basis,
commonly an emotional one. Id. We do not conduct a de novo review of the record with a view to
making a wholly independent judgment as to probative value versus prejudicial risk. Id. at 392. We
reverse a trial court's determination under Rule 403 "rarely and only after a clear abuse of discretion,"
recognizing that the trial court is in a superior position to gauge the impact of the relevant evidence. 
Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); Jones v. State, 119 S.W.3d 412,
421-22 (Tex. App.--Fort Worth 2003, no pet.).

 The relevant criteria in determining whether the prejudice of an extraneous offense
substantially outweighs its probative value include, but is not limited to: (1) the strength of the
extraneous offense to make a fact of consequence more or less probable; (2) the potential the
extraneous-offense evidence has to impress the jury in some irrational, but nevertheless indelible
way; (3) the time needed to develop the evidence, during which the jury will be distracted from
consideration of the indicted offense; and (4) the proponent's need for the evidence to prove a fact
of consequence. State v. Mechler, 153 S.W.3d 435, 440 (Tex. 2005) (citing Montgomery, 810
S.W.2d at 392); Mozon, 991 S.W.2d at 847.

 The first factor, probative value, weighs in favor of admission. The State claimed that
Childress put the false impression before the jury that Morales was a peaceful person, and the State
offered evidence of arrests for violent crimes to rebut that impression. The record shows Childress
testified, at best, that Morales was not the type of person to make threats, use abusive language, or
make threatening gestures toward an officer. The State mischaracterized the direct questions to
Childress and the answers she gave. However, Morales failed to object to the mischaracterization
or request an examination of the record for the specific questions and answers. The extraneous-arrest
evidence was probative of both how well Childress knew Morales and the foundation for her
characterization of Morales. Therefore, the prior arrests were probative to rebut the "false
impression."

 The second factor, the potential to give the jury an irrational impression, inquires as to the
evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense
charged. Mechler, 153 S.W.3d at 440. The prior arrests admitted into evidence included robbery,
battery of a police officer, resisting arrest, and domestic violence. The arrests for robbery and battery
of a police officer occurred more than a decade prior and are either identical or arguably worse than
the offense with which Morales was currently charged. The potential prejudice of nearly identical
acts is very high because it is stark proof of criminal character or propensity. Parks v. State, 746
S.W.2d 738, 739 (Tex. Crim. App. 1987). However, giving limiting instructions to the jury is a
factor to consider in determining whether the jury improperly considered the extraneous-arrest
evidence. Owens v. State, 827 S.W.2d 911, 916-17 (Tex. Crim. App. 1992). In this case, the trial
court gave a limiting instruction to the jury, and although not as narrowly tailored to the specific
issues involved as it could have been, the charge did seek to have the jury limit its use of the
extraneous-offense evidence. (6) Therefore, we find that this factor weighs toward admission.

 The third factor, the time spent developing evidence of the extraneous arrests, was not unduly
lengthy. Childress' testimony regarding the extraneous arrests took up only about four pages in the
564-page record. Thus, this factor is neutral and favors neither exclusion nor admission. Blackwell
v. State, 193 S.W.3d 1, 18 (Tex. App.--Houston [1st Dist.] 2006, no pet.).

 The fourth factor, the State's need for the extraneous-arrest evidence to prove a fact of
consequence, weighs in favor of admission. The State sought to rebut Childress' characterization
of Morales that he was "not that type of person" by showing that she did not know Morales that well
or that long, i.e., "the foundation of her belief [was] .Â .Â . incomplete." The question of whether
Morales was threatening the officers is directly related to his intent, and the State did not have other
evidence with which to rebut Childress' characterization of Morales' character. Therefore, the State
had need for this evidence.

 Considering all four factors together, we conclude that the probative value of the extraneous-
arrest evidence was not substantially outweighed by its prejudicial impact. Consequently, we hold
that the trial court properly overruled Morales' Rule 403 objection and overrule this point of error.

 We affirm the judgment.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 30, 2009

Date Decided: August 12, 2009


Publish

1. Morales' second and third points of error challenge, respectively, the factual and legal
sufficiency of the evidence to support a finding that he caused bodily injury to Robertson. His fourth
point asserts a claim for "fatal variance," however, it merely restates his evidentiary sufficiency
challenge and fails to cite any supporting law. We analyze Morales' fourth point of error as a legal
sufficiency challenge; and, to the extent he seeks to make a fatal variance claim, we overrule it as
inadequately briefed. See Tex. R. App. P. 38.1(i). 
2. We find the trial court's charge to the jury to have been in substantial if not complete
compliance with the applicable law, and thus, the equivalent of a hypothetically correct charge.
3. A jury may infer that a victim actually felt or suffered physical pain, because people of
common intelligence understand pain and some of the natural causes of it. Randolph v. State, 152
S.W.3d 764, 774 (Tex. App.--Dallas 2004, no pet.). When considering whether evidence is
sufficient to establish that a victim suffered pain, juries may use common sense and apply common
knowledge, observation, and experience gained in the ordinary affairs of life, using inferences that
may reasonably be drawn from the evidence. Wawrykow, 866 S.W.2d at 88-89.


 Robertson testified to suffering only two injuries:


 Q [By the State] And what kind of pain did [the pepper spray] cause
you?

 

 A . . . you can't breathe, on a regular . . . it does takes your breath away.
It feels like you're out of air. . . .

 

 Q . . . you had the inability to breathe properly?


 A Yeah. And I was blinded for a little bit, too.

 

 Q In both eyes or just one eye? 


 A Just, mainly, one. 

 

 . . . .


 Q [By Defense Counsel] Did [Morales] do anything to harm or injure you?


 A Yes, sir.

 

 Q What did [Morales] do to harm or injure you?


 A Well, my knees were scraped up from having to be on the ground, on
the concrete, and I got sprayed [with pepper spray] as a result of him resisting. 
4. At trial, Morales preserved an objection under Rules 404(b) and 609 of the Texas Rules of
Evidence; however, Morales does not cite, raise, or otherwise argue Rules 404(b) or 609 in his brief,
so we do not address them here and must assume, for purposes of this review, that, under Rules
404(b) and 609, the evidence was fundamentally relevant for an admissible purpose other than
conformity. Tex. R. Evid. 404(b), 609.
5. The trial court granted Morales a running objection to all questions about Morales' prior
arrests.
6. The following instruction was given to the jury and is not challenged on appeal:


 You are instructed that if there is any testimony before you in this case
regarding the defendant having committed offenses other than the offense alleged
against him in the indictment in this case, you cannot consider said testimony for any
purpose unless you find and believe beyond a reasonable doubt that the defendant
committed such other offenses, if any were committed, and even then you may only
consider the same in determining the intent, knowledge, design, and/or scheme of the
defendant, if any, in connection with the offense, if any, alleged against him in the
indictment in this case, and for no other purpose.